Southern United Fire Insurance Company ("Southern United"), Time Payment Plan ("TPP"), and The Rider Agency petition this Court for a writ of mandamus directing the Baldwin Circuit Court to vacate its order compelling them to attend and to participate in an arbitration proceeding the respondent, Bobby E. Dewrell, Jr., unilaterally scheduled with an arbitrator unilaterally selected by him. We grant the petition and issue the writ. Southern United, TPP, and The Rider Agency also appeal the trial court's order denying their motion to compel arbitration. In that appeal, we reverse and remand as to Southern United and TPP and dismiss the appeal as to The Rider Agency.
 Facts and Procedural History
On November 8, 2000, Bobby E. Dewrell, Jr., visited The Rider Agency to obtain automobile insurance coverage. While there Dewrell completed an application for coverage with Southern United and an application for premium financing from TPP.
Based on the information Dewrell had given, the insurance agent calculated the total annual premium amount for Dewrell's automobile to be $1,952.60. Dewrell made an initial payment of $280, and he agreed to make 10 monthly payments of $167.26 for the Southern United policy. Southern United alleges that when it processed Dewrell's application, it discovered that Dewrell had misrepresented his driving history, and it sent Dewrell a letter requesting an additional premium. Southern United asserts that the letter informed Dewrell that failure to submit the additional premium within the requested time would result in its canceling the policy on December 12, 2000. Because, Southern United alleges, Dewrell failed to submit the additional premium within the time *Page 153 
specified, it canceled the policy on that date for nonpayment of premiums.[1] The evidence in the record, however, merely indicates that Dewrell failed to timely make the monthly payment due on December 8, 2000. Accordingly, on December 13, 2000, TPP sent Dewrell a notice that the policy would be canceled if payment was not received by December 24, 2000.
Dewrell was involved in an automobile accident on December 16, 2000; the record reflects that Dewrell made a payment of $185 to The Rider Agency on December 22, 2000. After it was notified of Dewrell's accident, Southern United issued a reservation-of-rights letter on December 28, 2000. In that letter, Southern United advised Dewrell that, although it was not yet denying coverage, Southern United's records indicated that Dewrell's policy had been canceled on December 12, 2000. Southern United subsequently denied coverage for Dewrell's December 16, 2000, automobile accident.
Dewrell sued Southern United, TPP, and The Rider Agency, alleging breach of contract, bad faith, negligence, and wantonness. Southern United moved to compel arbitration pursuant to the arbitration agreement contained in the Southern United insurance policy; that agreement provided:
 "ARBITRATION — Any and all disputed claims and controversies of any nature whatsoever between any insured and Southern United Fire Insurance Company, its agencies (or persons or entities alleged to be its agents), employees, representatives, and/or officers, whether such disputes, demands, claims or controversies are based upon, relate to or arise out of this Policy or the issuance or events leading up to or contemporaneous with the issuance of this Policy shall be submitted to binding arbitration. The arbitration proceedings shall be administered by an independent resolution party and it [sic] shall be conducted pursuant to said party's Alabama insurance policy arbitration rules. Any party may initiate an arbitration proceeding. The applicant/insured may initiate arbitration and obtain a copy of said rules by contacting the Company . . . ."
In support of its motion, Southern United submitted a copy of the policy and the affidavit of Alfred Trovinger, a Southern United employee who attested to the nature of Southern United's business and its effect on interstate commerce.
Dewrell alleges that he had not received a copy of the Southern United policy and that he was thus unaware of the language of the arbitration agreement contained in the policy until Southern United submitted the policy in support of its motion to compel arbitration. Thereafter, Dewrell requested, and subsequently received, a copy of the arbitration rules referred to in the policy. On July 31, 2001, Dewrell's attorney wrote counsel for Southern United, stating that Dewrell could not "agree to arbitrate this case under the provisions set forth in the policy or the rules because Mr. Dewrell was never provided a copy of the policy and had no opportunity to reject the provisions of arbitration set forth therein as specified in the application." In the letter, Dewrell's attorney informed counsel for Southern United that Dewrell "agree[d] to arbitrate this case under the arbitration provisions disclosed to Mr. *Page 154 
Dewrell in the application," and that Dewrell had scheduled an arbitration before an arbitrator unilaterally selected by Dewrell for August 24, 2001.
On August 1, 2001, Southern United's attorney responded to the July 31 letter, indicating that Southern United would not participate in the August 24, 2001, arbitration because, Southern United said, it had not been scheduled in accordance with the terms of the arbitration provision contained in the insurance policy. The letter also informed Dewrell that Southern United intended to proceed with its motion to compel arbitration that was still pending before the trial court.
On August 10, 2001, after receiving Southern United's response, Dewrell moved the court to compel Southern United and the other defendants to attend and participate in the scheduled arbitration. Southern United opposed the motion, asserting that the arbitration had been unilaterally scheduled with a unilaterally selected arbitrator, and that, therefore, it did not comply with the terms of the arbitration agreement contained in the insurance policy.
On August 17, 2001, TPP moved to compel Dewrell to submit the claims against it to binding arbitration. TPP argued that it was entitled to arbitration based on the arbitration agreement included in the Southern United policy, and it cited several cases in which this Court held that an arbitration agreement in an insurance policy also applies to claims against third parties, such as TPP.
On August 21, 2001, the trial court granted Dewrell's motion and ordered the defendants to attend and participate in the arbitration that Dewrell had scheduled. The trial court also denied the motions to compel arbitration filed by Southern United and TPP as moot.
On August 22, 2001, Southern United, TPP, and The Rider Agency petitioned this Court for a writ of mandamus directing the trial court to vacate its order requiring them to attend and participate in the unilaterally scheduled arbitration. On that same date, Southern United and TPP moved the trial court to reconsider its ruling that their motions to compel were moot.[2] On August 28, 2001, Southern United and TPP filed a direct appeal regarding the trial court's denial of their motions to compel arbitration as moot. Although The Rider Agency is listed as an appellant on the notice of appeal filed on August 28, 2001, the record indicates that The Rider Agency filed its motion to compel arbitration on August 22, 2001, and that the trial court never ruled on that motion. Moreover, the briefs contain no arguments regarding whether the trial court should have granted or denied The Rider Agency's motion to compel arbitration. Because no final order exists from which The Rider Agency could appeal, any claims regarding its motion to compel arbitration are dismissed.
 Analysis
Southern United, TPP, and The Rider Agency first argue that this Court should grant their petition and issue a writ of mandamus directing the trial court to vacate its order compelling them to attend and to participate in the arbitration Dewrell had unilaterally scheduled before an arbitrator unilaterally selected by him. Southern United and TPP also argue on their direct appeal that the trial court erroneously denied as moot their motions to compel arbitration.
 "`A writ of mandamus is an extraordinary remedy that requires the showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) *Page 155 
the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.' Ex parte McNaughton, [728 So.2d 592, 594] (Ala. 1998). A petition for a writ of mandamus is the proper means by which to challenge a trial court's order granting a motion to compel arbitration. Ex parte Phelps, 672 So.2d 790 (Ala. 1995)."[3]
Ex parte Napier, 723 So.2d 49, 52 (Ala. 1998). "`[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.'" Vann v. First Community Credit Corp., [Ms. 1010113, March 8, 2002] 834 So.2d 751, 752-53 (Ala. 2002) (quoting Ex parteRoberson, 749 So.2d 441, 446 (Ala. 1999)).
Specifically, Southern United, TPP, and The Rider Agency contend that they are entitled to relief because the trial court ordered them to attend and to participate in an arbitration that did not comply with the terms outlined in the insurance policy. The arbitration agreement contained in the policy stated that arbitration "shall be conducted pursuant to [an independent resolution] party's Alabama insurance policy arbitration rules." Those rules provide:
"1. Initiation of Arbitration
 "These rules shall apply to any and all disputed claims and controversies of any nature whatsoever between any insured and Southern United Fire Insurance Company, its agencies (or persons or entities alleged to be its agents), employees, representatives, and/or officers. Either party to the dispute, claim, and/or controversy may initiate an arbitration under these rules by contacting Resolute Systems, Inc.'s Case Consulting Division at (800) 776-6126.
"2. Panel of Arbitrators
 "Resolute shall establish and maintain a Panel of Distinguished Neutrals from which parties may select a mutually agreeable arbitrator.
"3. Selection of Arbitrator
 "Unless prohibited by law, the dispute shall be decided by one arbitrator. Resolute will submit a Panel of Distinguished Neutrals from which each party shall have the right to find a mutually acceptable arbitrator. Resolute will facilitate the appointment of the arbitrator from the names chosen by the parties.
 "If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any reason the selection cannot be made from the submitted Panel(s), Resolute shall appoint the arbitrator from among the members of the Panel of Distinguished Neutrals."
Conversely, Dewrell contends that, because he did not receive a copy of the policy and because he was not afforded an opportunity to reject the arbitration agreement contained in the policy, he can be made to arbitrate his claims pursuant only to the language contained in the application. The application for insurance executed by Dewrell provided:
"READ THE FOLLOWING INFORMATION CAREFULLY.
 "1. The policy for which you have applied includes a binding arbitration agreement. *Page 156 
 "2. The arbitration agreement requires that any disagreement related to this policy must be resolved by arbitration and not in a court of law.
 "3. The results of the arbitration are final and binding on you and the insurance company.
 "4. In an arbitration, an arbitrator, who is an independent, neutral party, gives a decision after hearing the positions of the parties.
 "5. When you accept this insurance policy you agree to resolve any disagreement related to the policy by binding arbitration instead of a trial in court including a trial by jury.
 "6. Arbitration takes the place of resolving disputes by a judge and jury and the decision of the arbitrator cannot be reviewed in court by a judge and jury.
"ACKNOWLEDGMENT OF ARBITRATION AGREEMENT
 "I have read this statement. I understand that I am voluntarily surrendering my right to have any disagreement between the insurance company and myself resolved in court. This means that I am waiving my right to a trial by jury.
 "I understand that upon receipt of the policy I should read the arbitration clause contained in the policy and that I have the right to reject this policy within three (3) days of the date of delivery if I do not want to accept the requirement for arbitration.
"ARBITRATION AGREEMENT
 "I understand that this same type of insurance may be available through an insurance company that does not require that policy related disagreements be resolved by binding arbitration."
(Capitalization in original.) Dewrell's signature appears on the application just below this statement.
"`An application for insurance is an offer to enter into an insurance contract, and if the insurer issues a policy materially different from that applied for, the policy is a counter-offer which becomes binding only when accepted by the applicant.'" Ex parte Rager, 712 So.2d 333, 335
(Ala. 1998) (quoting Connell v. State Farm Mut. Auto. Ins. Co.,482 So.2d 1165, 1167 (Ala. 1985)). Although Dewrell contends that he did not, and could not, accept the terms of the Southern United policy because he did not receive a copy of either the policy or the arbitration rules referenced in the policy, it is undisputed that he is seeking to recover damages based on allegations that, among other things, Southern United breached the contract of insurance. Therefore, Dewrell is relying on the Southern United insurance policy to support his claim for damages. Because Alabama law prohibits a person from picking and choosing those provisions in a contract that he wants to apply, if Dewrell wants to recover for a breach of the insurance policy, he has no choice but to pursue his remaining claims under the terms of that contract. See DeltaConstr. Corp. v. Gooden, 714 So.2d 975, 981 (Ala. 1998). Thus, arbitration in this case must comply with the terms outlined in the Southern United policy and the arbitration rules referred to in that policy. Accordingly, the trial court erred when it compelled Southern United, TPP, and The Rider Agency to attend and to participate in the arbitration unilaterally scheduled by Dewrell because that arbitration did not comply with the terms of the arbitration agreement in the insurance policy. *Page 157 
Because Southern United, TPP, and The Rider Agency have demonstrated a clear legal right to the relief sought, we grant their petition and we issue a writ of mandamus directing the trial court to vacate its order compelling them to participate in the arbitration arranged by Dewrell. Moreover, because the trial court's order compelling Southern United and TPP to attend and to participate in the arbitration is to be vacated, Southern United and TPP's motions to compel arbitration are not moot. Accordingly, we reverse the trial court's order denying their motions to compel as moot and remand the case for the trial court to consider and to rule upon those motions.
1002027 — PETITION GRANTED; WRIT ISSUED.
1002093 — REVERSED AND REMANDED AS TO SOUTHERN UNITED AND TPP; APPEAL DISMISSED AS TO THE RIDER AGENCY.
Houston, See, Lyons, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., concurs in the result.
[1] In his brief to this Court, Dewrell correctly points out that none of the facts Southern United alleges regarding the misrepresented driving record and the additional premium request were before the trial court and that none of those facts are supported by the record. Those facts have been included in this opinion merely for the background they provide regarding Dewrell's cause of action. Their inclusion should not be read as an acceptance by this Court of the accuracy of those facts.
[2] The record indicates that the trial court never ruled on the motion to reconsider.
[3] This Court adopted Rule 4(d), Ala.R.App.P., effective October 1, 2001, to provide that orders granting or denying motions to compel arbitration are reviewable by direct appeal. However, both the trial court's order compelling arbitration and this petition were filed before the effective date of the new rule. Thus, a petition for writ of mandamus is the proper vehicle by which to challenge the trial court's order in the instant case.