HOUSTON, Justice.
This is an appeal from an order of the Jefferson Circuit Court granting the defendants’ motion to compel arbitration. Southern Foodservice Management, Inc. (“Foodservice”), filed an action against Insurance Mass Marketing Systems, Inc. (“IMMS”), and American Fidelity Assurance Company (“American Fidelity”), alleging fraud, suppression, bad-faith failure to pay a claim, and breach of contract. IMMS and American Fidelity filed a motion to compel arbitration based on an arbitration clause contained in a contract for reinsurance. Foodservice opposed the motion; however, the trial court granted the motion and denied Foodservice’s subsequent motion to alter, amend, or vacate. We affirm.

I. Facts

For more than 15 years, Foodservice, a dining management service, has provided a self-funded medical insurance plan for its employees. Foodservice, through its agent, Group Resources, Inc. (“GRI”), or its predecessor, purchased excess or stop-loss insurance to protect against catastrophic losses. Routinely, GRI solicited proposals from various insurance companies for that coverage and presented the proposals, along with GRI’s recommendation, to Foodservice.
On April 26, 1999, GRI solicited a proposal from IMMS for stop-loss insurance coverage for Foodservice. On April 27, 1999, IMMS submitted a coverage proposal to GRI; American Fidelity was the insurer. On June 1, 1999, IMMS submitted a second proposal for stop-loss insurance; *318 that proposal contained two additional options requested by GRI after IMMS had submitted its first proposal. On June 9, 1999, GRI instructed IMMS to bind stop-loss coverage with American Fidelity as the insurer.
Foodservice executed an application for coverage and paid an advance premium of $11,384.95. The application and premium were sent to GRI. According to the application, Foodservice appointed GRI “as its' agent for purposes of the REINSURANCE AGREEMENT and the applied for reinsurance coverage.” (Capitalization in original.)
IMMS advised GRI at that time that American Fidelity could not issue the reinsurance policy until it received several items, including the signed application, an updated list of previously paid claims, and a disclosure form. GRI failed to provide this information, and IMMS repeated its request five more times over the next three months.[1] On October 4, 1999, GRI produced the signed application, the disclosure form, and a year-end claims report.
Upon review of the year-end claims report, IMMS reported to GRI that the aggregate factor would be increased because the average claim for Foodservice was 28 percent higher than the figure used in the initial proposal, thus increasing the premium. After subsequent negotiations between GRI and IMMS, the agreement was confirmed in writing on November 29, 1999.
The stop-loss policy, issued by American Fidelity, was mailed to GRI, as agent for Foodservice, on December 6, 1999. GRI forwarded the policy, which had an effective date of July 1, 1999, to Foodservice on January 25, 2000.[2] The policy contained the following arbitration provision:
“ARBITRATION: Any controversy or dispute arising out of or relating to this REINSURANCE AGREEMENT shall be settled by arbitration in accordance with the rules of the American Arbitration Association. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. This provision shall survive the termination of this REINSURANCE AGREEMENT.”
(Capitalization in original.)
On November 17, 2000, Foodservice, through GRI, made a claim against the policy for $336,443.43. American Fidelity tendered $120,378.57 as total payment for the claim. The balance of that claim is the subject of this action.
Foodservice filed this action, asserting claims against GRI and several other insurance companies relating to the payment of proceeds under insurance policies covering Foodservice’s employee-benefit plan., Foodservice later amended its complaint to add American Fidelity and IMMS as defendants and to assert claims alleging breach of contract, fraud, suppression, and bad-faith refusal to pay an insurance claim.
American Fidelity and IMMS moved to compel arbitration under the arbitration agreement of the claims against them. In response to the motion to compel arbitration, Foodservice admitted that the reinsurance agreement was a transaction that involved interstate commerce; Foodser-vice argued, however, that it had never agreed to the arbitration clause in the policy. Following oral argument, the trial court granted the motion to compel arbi *319 tration. Foodservice filed a motion to alter, amend, or vacate the court’s order; the trial court subsequently denied that motion. Foodservice appealed.

II. Issues on Appeal

Foodservice presents two issues on appeal: (1) whether American Fidelity, IMMS, and Foodservice had entered into a valid contract that included a valid arbitration agreement, and (2) whether American Fidelity and IMMS failed to deliver the insurance policy within a reasonable period as required by Ala.Code 1975, § 27-14-19, and, if so, whether, because of the delay, they are estopped from asserting the arbitration clause.

A. Was the contract between American Fidelity, IMMS, and Foodservice a valid contract that included a valid arbitration provision?

This Court reviews de novo a trial court’s ruling on a motion to compel arbitration. Allied-Bruce Terminix Co. v. Butler, 816 So.2d 9, 11-12 (Ala.2001). A party moving to compel arbitration must establish (1) the existence of a contract calling for arbitration and (2) that the contract substantially affects interstate commerce. Celtic Life Ins. Co. v. McLendon, 814 So.2d 222, 224 (Ala.2001). Foodser-vice admits that the insurance policy at issue is a transaction in interstate commerce. Foodservice argues, however, that it never agreed to an arbitration provision. Foodservice contends that it is not obligated to arbitrate because it never signed any document containing an arbitration provision; the document it did sign — the application — did not contain an arbitration provision. Foodservice contends that the absence of its signature on the policy demonstrates a lack of mutual assent to the arbitration provision contained in the policy. Therefore, the dispositive issue is whether Foodservice, IMMS, and American Fidelity contracted to arbitrate their claims.
“Whether a contract exists must be determined under general state-law contract principles.” Ex parte Rush, 730 So.2d 1175, 1177 (Ala.1999). “It is not a requirement of Alabama contract law that for a contract provision to be enforceable it must have appeared also on the application to enter into the contract.” Southern United Fire Ins. Co. v. Howard, 775 So.2d 156, 162 (Ala.2000). Further, the Federal Arbitration Act “requires only that there be a “written provision’ in a ‘contract’; it does not specify that a party’s assent to the terms of a contract containing an arbitration provision can be evidenced only by that party’s signature.” Ex parte Rush, 730 So.2d at 1177; see 9 U.S.C. § 2.
Foodserviee’s argument that to be effective the arbitration provision should have been referenced in the application Foodservice signed is without merit. In Ex parte Roger, 712 So.2d 333, 335 (Ala. 1998), this Court stated:
“Many parts of ah insurance policy are not mentioned in the application. If we accepted this argument, then any part of an insurance policy that was not specifically mentioned in the application would be automatically invalid, even if the insured did not object within the time permitted. Such a result would be inequitable to the insurance company.”
Even if the addition of an arbitration provision in a policy amounted to a material alteration (and we have said that it does not[3]), Foodservice accepted the alteration by not returning the policy and by paying premiums on it. Ex parte Roger, 712 So.2d at 335. “ ‘An application for insurance is an offer to enter into an insurance *320 contract, and if the insurer issues a policy materially different from that applied for, the policy is a counter-offer which becomes binding only when accepted by the applicant.’ ” 712 So.2d at 335 (quoting Connell v. State Farm Mut. Auto. Ins. Co., 482 So.2d 1165, 1167 (Ala.1985)). Therefore, it does not matter that the application did not include an arbitration provision or mention arbitration.
Additionally, under Alabama law, Food-service manifested its assent to the arbitration provision in several ways. ■ First, Foodservice failed to exercise its right to cancel the policy. See Ex parte Roger, 712 So.2d at 335. Second, Foodservice paid its premiums, indicating its acceptance of the entire policy. See Howard, 775 So.2d at 162; see also Ex parte Roger, 712 So.2d at 335-36. Third, Foodservice submitted a claim under the policy. See Howard, 775 So.2d at 162-63.[4]

B. Did American Fidelity and IMMS deliver the insurance policy to Food-service within a reasonable time?

An insurer must deliver a copy of the insurance policy to the insured within a reasonable time after the policy has been issued. Ala.Code 1975, § 27-14-19(a). Section 27-14-19 states, in pertinent part:
“(a) Subject to the insurer’s requirements as to payment of premium, every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance, except where a condition required by the insurer has not been met by the insured.”
In Brown Machine Works & Supply v. Insurance Company of North America, 659 So.2d 51, 58 (Ala.1995), this Court held that when an insurance company fails to comply with Section 27-14-19, and that failure to comply has prejudiced the insured, the insurance company is estopped from enforcing an exclusion in the policy. Foodservice argues that American Fidelity and IMMS did not deliver the policy to it in a reasonable time and, thus, that they should be estopped from enforcing the arbitration provision.[5] However, Foodser-vice’s argument is misplaced; American Fidelity and IMMS complied with all statutory requirements.
American Fidelity and IMMS were required to deliver the policy to Foodservice within a reasonable time after it was issued. See Ala.Code 1975, § 27-14-19. Even though the reinsurance policy became effective on July 1, 1999, it was not issued until December 6, 1999, at which time it was delivered to GRI. The reason for the delay between the effective date and the issuance date was that all “condition[s] required by the insurer [had] not been met by the insured.” Ala.Code 1975, § '27-14-19. At the time Foodservice applied for the reinsurance policy, IMMS advised GRI that American Fidelity could not issue the policy until it received the signed application, an updated list of paid claims, and a disclosure form. This request was repeated five more times between mid-June and October 1999, at which time GRI and Foodservice finally complied. On October 4, 1999, after it had *321 received all of the required information, IMMS renegotiated certain provisions of the policy with GRI. The agreement was confirmed in writing on November 29, 1999. The reinsurance policy was sent to GRI seven days later. Therefore, the policy was delivered to GRI in a reasonable time.
Additionally, Foodservice argues that there was a 50-day delay from the time the policy was delivered to GRI until Foodservice received it. However, GRI was Foodservice’s agent. In the application for reinsurance, Foodservice identified GRI as “its agent for purposes of the REINSURANCE AGREEMENT and the applied for insurance coverage.” (Capitalization in original.) Foodservice agreed not to hold American Fidelity or IMMS liable for any “negligence, error, omission or defalcation” committed by GRI. Moreover, the policy states that notice to GRI is notice to Foodservice. Therefore, IMMS and American Fidelity are not responsible for any “unreasonable” delay between the time they delivered the policy to GRI and the time Foodservice finally received it.
American Fidelity and IMMS fully complied with Ala.Code 1975, § 27-14-19.
The trial court did not err in granting IMMS and American Fidelity’s motion to compel arbitration, and its order compelling arbitration as to those parties is affirmed.
AFFIRMED.
SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., dissents.

. These requests were made on June 22, July 27, August 19, September 10, and September 30, 1999.

. As of January 2000, Foodservice had paid approximately $80,000 in premiums on the policy, which had been in effect since July 1, 1999.

. See SouthTrust Bank v. Williams, 775 So.2d 184, 189 (Ala.2000); Ex parte Shelton, 738 So.2d 864, 871 (Ala.1999); American Bankers Ins. Co. of Florida v. Crawford, 757 So.2d 1125, 1130 (Ala.1999).

. A plaintiff cannot pursue breach-of-contract and bad-faith-refusal-to-pay claims under the contract and at the same time "repudiate its burdens and conditions." Ballard Servs., Inc. v. Conner, 807 So.2d 519, 523 (Ala.2001). Under Alabama law, "a person cannot merely pick and choose the provisions in a contract that he wants to apply.” Delta Constr. Corp. v. Gooden, 714 So.2d 975, 981 (Ala.1998).

. Foodservice alleges that there was at most a 7-month delay (from the policy’s effective date of July 1, 1999, to its delivery to Foodser-vice on January 25, 2000), and at least a 50-day delay (from the policy’s delivery to GRI on December 6, 1999, to the date Foodservice actually received the policy, January 25, 2000).