American Health Underwriters, Inc. ("AHU"), and Philadelphia American Life Insurance Company ("Philadelphia American"), defendants in a proceeding in the Marengo Circuit Court, appeal from the trial court's denial of their motions to compel arbitration of the claims of the plaintiff below, DeJurnitte[1] Bender. We reverse and remand.
On July 22, 1999, DeJurnitte Bender and his wife Peggy Bender completed an application for health insurance with Philadelphia American. The application was provided by Ray Jenks of The Jenks Insurance Agency. Peggy was listed as the applicant/proposed insured, and DeJurnitte was listed as a spouse/proposed insured. Along with the application, Jenks also provided the Benders with a document entitled "Alabama Arbitration Agreement Endorsement."[2] This document *Page 1106 
(hereinafter "the arbitration endorsement") contained an arbitration provision; that provision stated, in part:
 "I agree that binding arbitration will be used to resolve the following claims, disputes or lawsuits.
 "1. Any and all claims, disputes or causes of action that I or my dependents have concerning my Philadelphia American Insurance Policy/Certificate or the coverage therein; and/or
 "2. Any claims, disputes or causes of action that I have concerning any relationships that my Philadelphia American Policy/Certificate creates; and/or
". . . .
 "4. Any and all claims, disputes or causes of action that I have that arise from the solicitation, sale and/or servicing of the Policy/Certificate by any agent or employee of Philadelphia American including, but not limited to, any allegation of fraud or other improper act or omission."
The arbitration endorsement also states:
 "Upon acceptance of my application by Philadelphia American, as evidenced by the Issuance of a Policy/Certificate, this Arbitration Agreement shall be incorporated by this reference into any Policy/Certificate issued. The entire insurance contract shall consist of this Arbitration Agreement, the Application for Insurance, and the Policy/Certificate."
The arbitration endorsement contained only one signature line for the "applicant," and Peggy signed on that line and inserted the date July 22, 1999. Jenks signed on a line reserved for a witness. DeJurnitte did not sign the document.
Jenks sent the application and arbitration endorsement to AHU, Philadelphia American's general agent, along with a check from the Benders for the initial premium. AHU then forwarded the application and check to Philadelphia American for underwriting. Philadelphia American contacted the Benders by telephone on August 7, 1999, to verify certain information.
Philadelphia American ultimately issued a policy to insure DeJurnitte but rejected Peggy as an insured because it was unable to obtain her medical records. According to Philadelphia American, in correspondence dated November 22, 1999, it mailed DeJurnitte a policy, which had an effective date of November 5, 1999. DeJurnitte, however, claims that he did not receive a copy of the policy in November 1999.[3]
After the policy was issued, DeJurnitte and his health-care providers made numerous claims under the policy for the payment of various medical expenses. On January 18, 2002, Philadelphia American denied certain claims related to the treatment of DeJurnitte's heart/circulatory condition.
In February 2003, DeJurnitte sued Philadelphia American, AHU, The Jenks Insurance Agency, and Ray Jenks, alleging, among other things, breach of contract, fraud, and bad faith failure to pay an insurance claim. On May 22, 2003, Philadelphia American filed a "Motion to Dismiss for Lack of Jurisdiction," in which it argued that DeJurnitte's claims against Philadelphia American were due to be arbitrated. On May 29, 2003, AHU filed a motion to compel arbitration in which it argued that it was entitled to compel arbitration *Page 1107 
under the arbitration endorsement. DeJurnitte filed an opposition to the motions to compel arbitration, arguing that he had not consented to arbitration. In an order filed August 29, 2003, the trial court denied the motions to compel arbitration based on the authority of Auvil v. Johnson, 806 So.2d 343 (Ala. 2001). Philadelphia American and AHU then appealed.[4] Because the records, arguments, and legal issues involved in both cases are essentially identical, this Court consolidated the appeals ex mero motu. See Rule 3(b), Ala. R.App. P.
 Standard of Review "An appeal is the proper method by which to challenge a trial court's denial of a motion to compel arbitration. Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171, 1172 (Ala. 1999). `[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party
is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.' Ex parte Roberson, 749 So.2d 441, 446 (Ala. 1999); Ex parte Southern United Fire Ins. Co., 843 So.2d 151 (Ala. 2002)."
Orkin Exterminating Co. v. Larkin, 857 So.2d 97, 101 (Ala. 2003).
 Discussion
On appeal, Philadelphia American and AHU maintain that DeJurnitte assented to the arbitration endorsement. Specifically, Philadelphia American and AHU assert that, although DeJurnitte did not sign the arbitration endorsement, it is part of the insurance contract to which he is a party and thus he is required to submit his claims to arbitration. We agree.
In support of its motion to compel arbitration, Philadelphia American submitted affidavits averring that it mailed DeJurnitte on November 22, 1999, correspondence that included a copy of his policy, which was accompanied by the arbitration endorsement and certain policy riders. Philadelphia American also stated that its correspondence included checks refunding portions of the initial premium, which DeJurnitte and Peggy cashed; it recited that a copy of DeJurnitte's policy was enclosed, as was an identification card issued to DeJurnitte.[5]
DeJurnitte, however, claims in an affidavit in support of his opposition to the motions to compel arbitration that he did not receive a copy of the policy and that he did not know of the existence of the arbitration endorsement "until sometime after October 16, 2001." DeJurnitte does not dispute that the arbitration endorsement accompanied the policy, and he offered no testimony concerning whether he received any of the correspondence Philadelphia American says it mailed on November 22, 1999.
In Ex parte Rager, 712 So.2d 333 (Ala. 1998), the plaintiff, Rager, applied for a "hospital accident policy" with Liberty National Life Insurance Company ("Liberty National"). After Liberty National approved Rager's application, it mailed him a policy; the policy included an endorsement that contained an arbitration provision. Rager later sued Liberty National, alleging fraud and bad faith failure to pay an insurance claim after Liberty National had denied one of his claims. Rager, 712 So.2d at 334. *Page 1108 
Liberty National moved the trial court to compel Rager to arbitrate his claims under the arbitration provision contained in the endorsement. Rager claimed, however, that he did not assent to the arbitration provision because the application did not mention arbitration and because he did not sign the endorsement. The trial court granted the motion to compel arbitration, and Rager appealed. This Court held:
 "An unsigned endorsement is valid if it is attached to the policy and is referenced therein. See Greene v. Hanover Insurance Co., 700 So.2d 1354 (Ala. 1997). It is undisputed that the endorsement containing the arbitration clause was attached to the policy from the outset. Also, the policy contains the following clause referring to the endorsement: `This policy with any attached papers is the entire contract between you and the Company.' Therefore, we hold that the endorsement is a valid part of the policy and must be enforced."
Rager, 712 So.2d at 335.
In this case, DeJurnitte's policy states: "The Policy under which this Certificate is issued, including any endorsements, riders, attached papers, its application, and all enrollment applications constitute the entire contract." Additionally, the arbitration endorsement states: "[T]his Arbitration Agreement shall be incorporated by this reference into any Policy/Certificate issued." Because the policy specifically incorporates endorsements and the arbitration endorsement accompanied the policy, the arbitration endorsement, although unsigned by DeJurnitte, is deemed to be part of the policy.Rager, supra; see also American Bankers Ins. Co. of Florida v.Crawford, 757 So.2d 1125, 1130 (Ala. 1999) (holding that an insurance policy that expressly referenced endorsements incorporated into the policy an endorsement that contained an arbitration provision).
DeJurnitte, however, argues that he did not receive the policy in November 1999. In an affidavit filed with his opposition to the motions to compel arbitration, DeJurnitte stated that he did not receive a copy of his policy and the arbitration endorsement "until sometime after October 16, 2001." DeJurnitte argues that he never agreed to the arbitration provision found in the endorsement and that he never signed the endorsement.
In Ex parte Southern United Fire Insurance Co., 843 So.2d 151
(Ala. 2002), the plaintiff, Dewrell, applied for automobile insurance with Southern United Fire Insurance Company ("Southern United"). 843 So.2d at 152. The application contained an arbitration provision. 843 So.2d at 153-154. Southern United accepted the application and issued a policy to Dewrell; however, the arbitration provision contained in the policy differed from the arbitration provision found in the application. 843 So.2d at 153-54.
Subsequently, Dewrell made a claim under the policy. Southern United denied the claim, saying it had canceled the policy because Dewrell had failed to pay the required premiums. 843 So.2d at 153. Dewrell sued Southern United and others, alleging, among other things, breach of contract. Southern United moved to compel arbitration under the arbitration provision contained in the policy. 843 So.2d at 153-54. Dewrell argued, however, that Southern United had never given him a copy of the policy and that he was unaware that the policy contained an arbitration agreement. Dewrell further argued that he did not agree to the terms of the arbitration provision contained in the policy and that he had never had the opportunity to reject them; thus, he maintained, arbitration should be conducted pursuant to *Page 1109 
the arbitration agreement found in the application. Id. at 155. The trial court agreed and ordered arbitration pursuant to the arbitration provision found in the application.
This Court held:
 "Although Dewrell contends that he did not, and could not, accept the terms of the Southern United policy because he did not receive a copy of either the policy or the arbitration rules referenced in the policy, it is undisputed that he is seeking to recover damages based on allegations that, among other things, Southern United breached the contract of insurance. Therefore, Dewrell is relying on the Southern United insurance policy to support his claim for damages. Because Alabama law prohibits a person from picking and choosing those provisions in a contract that he wants to apply, if Dewrell wants to recover for a breach of the insurance policy, he has no choice but to pursue his remaining claims under the terms of that contract. Thus, arbitration in this case must comply with the terms outlined in the Southern United policy and the arbitration rules referred to in that policy."
843 So.2d at 156 (emphasis added; citation omitted).
Like the plaintiff in Southern United, DeJurnitte is relying on the policy, which contains an arbitration provision, to support his claim for damages. Although DeJurnitte claims that he did not receive a copy of the policy, he, like the plaintiff inSouthern United, cannot arbitrarily pick and choose the provisions in the policy that he wants to apply; instead, if DeJurnitte wants to recover for a breach of the policy, he must pursue his claims under the terms of that contract, which include an agreement to arbitrate. Southern United, 843 So.2d at 156; see also Delta Constr. Corp. v. Gooden, 714 So.2d 975, 981
(Ala. 1998) (holding that a subcontractor could not enforce a part of the contract that he found advantageous, while avoiding an arbitration provision he opposed). Therefore, DeJurnitte is bound by the arbitration provision found in the arbitration endorsement, which is a part of the policy.
Additionally, DeJurnitte's conduct requires us to conclude that he accepted the policy and its arbitration provision. InSouthern Foodservice Management, Inc. v. American FidelityAssurance Co., 850 So.2d 316 (Ala. 2002), the plaintiff, Southern Foodservice Management, Inc., argued that it had not agreed to an arbitration provision contained in an insurance policy it had purchased because it had not signed the policy and the policy application, which it had signed, did not contain the arbitration provision. However, this Court held that Foodservice had manifested assent to the policy because it had not exercised its right to cancel the policy, it had paid premiums, and it had submitted a claim under the policy. Southern Foodservice Mgmt., 850 So.2d at 320.
It is undisputed that DeJurnitte did not attempt to exercise a 10-day-right-of-refusal-provision found in the policy, either after he allegedly received the policy in November 1999 or "sometime after October 16, 2001," when he says he received the policy. Additionally, DeJurnitte's complaint states that he continues to pay premiums under the policy and that he submitted claims he alleges are covered by the policy. These facts indicate that he assented to the policy. Southern Foodservice Mgmt.,supra. See also American Bankers Ins. Co. of Florida v.Crawford, 757 So.2d 1125, 1130 (Ala. 1999) (holding that the payment of policy premiums amounted to an acceptance of the terms of the policy, including an arbitration provision contained in the policy, even though the policyholder alleged that he did not *Page 1110 
know the policy contained an arbitration provision). Because DeJurnitte assented to the policy and cannot merely pick and choose those provisions he wishes to apply, he is bound by the arbitration endorsement, which is part of the policy.
On appeal, DeJurnitte claims that the order of the trial court denying arbitration should be affirmed on the authority of Auvilv. Johnson, 806 So.2d 343 (Ala. 2001). In Auvil this Court held that, under the facts of that case, an insured had not assented to arbitration. In Auvil, Amy Johnson and her husband, Duane Johnson, purchased a life insurance policy through an agent, Auvil. In doing so, Amy and Duane completed and signed an application, which did not contain an arbitration provision. Several weeks before completing the application, Duane alone had completed and signed a document entitled "Purchaser Suitability Form/New Account Information Arbitration Agreement" ("Purchaser Suitability Form"), which did contain an arbitration provision.Auvil, 806 So.2d at 344. There was no evidence indicating the Purchaser Suitability Form accompanied the application, and the policy ultimately issued did not contain an arbitration provision. Id. at 345.
Amy later sued Auvil and the insurance company, alleging fraudulent misrepresentation; fraudulent suppression; negligent hiring, training, and supervision; and wanton hiring, training, and supervision. Auvil moved the trial court to compel arbitration of Amy's claims. The trial court denied the motion, holding, among other things, that Amy did not "sign" the arbitration agreement. Id. at 345. Auvil alone appealed to this Court.
This Court held that Amy was not bound by the arbitration agreement found in the Purchaser Suitability Form. Id. at 346. Specifically, we noted that, while the application referred to attachments, it did not refer to the Purchaser Suitability Form and there was no evidence indicating that the Purchaser Suitability Form was attached to the application. Moreover, the policy ultimately issued contained no arbitration provision, and Amy did not base her claims on any document that contained an arbitration provision. Therefore, this Court held that, in light of those specific facts, Amy could not be required to submit her claims to arbitration. Id.
Auvil is distinguishable from this case. Unlike Amy's claims in Auvil, DeJurnitte's claims rest on a contract that contains an arbitration provision: the policy. While DeJurnitte claims that he, like the plaintiff in Auvil, did not specifically sign a document containing an arbitration provision, the evidence in this case indicates that the contract in this case — the policy — contains such a provision. DeJurnitte cannot arbitrarily pick and choose those provisions of the contract that he wants to apply. Therefore, Auvil is not applicable.
 Conclusion
The trial court's order denying Philadelphia American's and AHU's motions to compel arbitration is reversed, and the case is remanded.[6] *Page 1111 
1022141 — REVERSED AND REMANDED.
1030029 — REVERSED AND REMANDED.
HOUSTON, LYONS, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] The party's name appears as "Dejurnitte" in portions of the record.
[2] According to Philadelphia American, the Alabama Department of Insurance has approved the use of the "Alabama Arbitration Agreement Endorsement" in Philadelphia American's policies.
[3] DeJurnitte claims that he did not receive a copy of the policy and that he did not know of the existence of the arbitration endorsement "until sometime after October 16, 2001."
[4] The Jenks Insurance Agency and Ray Jenks are not parties to these appeals.
[5] Philadelphia American also presented evidence indicating that DeJurnitte had used his insurance-identification card.
[6] AHU claims on appeal that it is entitled, as Philadelphia American's agent, to enforce the arbitration endorsement. See generally Stevens v. Phillips, 852 So.2d 123 (Ala. 2002) (a defendant nonsignatory agent had standing to enforce an arbitration agreement between its principal and the plaintiff);Ex parte Gray, 686 So.2d 250 (Ala. 1996) (same). DeJurnitte does not dispute that AHU is entitled to do so. Furthermore, DeJurnitte states in his brief: "DeJurnitte denies that the arbitration agreement applies to his claims in this case. However, if this Court finds that it applies, DeJurnitte concedes that the arbitration endorsement referred to by [AHU] covers the claims in his Complaint." Therefore, we need not further address this issue.