PARKER, Justice.
 

 Thomas C. Crews appeals from a judgment compelling him to arbitrate his claims against the National Boat Owners Association Marine Insurance Agency, Inc. (“NBOA”), Markel American Insurance Company (“Markel”), and Jackie Ashe, whom Crews sued both individually and as an agent for NBOA. We affirm.
 

 
 *935
 

 Background and Procedural Posture
 

 Beginning in the mid 1990s, Crews purchased insurance for his boats annually from Ashe, who represented NBOA in the transactions. As part of the annual-renewal procedure, NBOA required that Crews complete its watercraft application, listing all boats that would be covered by the policy for the policy year. NBOA, in turn, selected Markel to provide the insurance. The policies were renewable each year on November 9 to be effective until November 9 of the following year.
 

 Crews states that in October 2008 he paid the premium for the renewal policy covering the period from November 9, 2003, to November 9, 2004. Among the boats covered by the policy was a 45-foot Sea Ray Cruiser yacht. He received a copy of the renewal policy in January 2004; the renewal policy included amendments to the policy that had been issued to cover the previous year, including changes to the geographic locations in which the yacht would be covered. The renewal policy also included a “General Amendatory Endorsement” that incorporated an arbitration agreement into the General Loss Conditions section of earlier the policy. The policy contained a provision that allowed Crews to cancel the policy by returning it. Crews did not return the policy.
 

 In September 2004, Hurricane Ivan struck the Gulf Coast of Alabama, and Crews’s 45-foot Sea Ray Cruiser yacht was damaged by the storm. When Crews filed a claim for the damage, NBOA advised him that he had violated the navigational restriction of the policy, under which he had warranted that the boat would not be south of Savannah, Georgia, “between June 1, and November 1, both dates inclusive.” NBOA then canceled the policy by a letter to Crews mailed on October 19, 2004.
 

 Crews filed a complaint in the Montgomery Circuit Court against NBOA, Markel, and Ashe, alleging breach of contract and tort claims against all three defendants. Markel removed the action to federal court, where Markel filed motions and answers that it has included as appendices to its brief to this Court. Markel asks this Court to include those appendices in the record.
 
 [1]
 
 “The record on appeal cannot be supplemented or enlarged by the attachment of an appendix to an appellant’s brief.
 
 Jenkins v. State,
 
 516 So.2d 944 (Ala.Crim.App.1987).”
 
 Goree v. Shirley,
 
 765 So.2d 661, 662 (Ala.Civ.App.2000). Accordingly, we decline to consider Mark-el’s request, which should properly have been presented to the trial court. See Rule 10(f), Ala. R.App. P.
 

 The federal court remanded the case to the state court as untimely filed,
 
 [2]
 
 and Markel moved the Montgomery Circuit Court to stay the proceedings and to compel arbitration in accordance with the arbitration agreement in the policy. The trial court issued an order on July 31, 2006, granting the motion to compel arbitration “with respect to all claims presented in
 
 *936
 
 this action.” Crews appeals, arguing that he was unaware of the existence of the arbitration agreement and the navigational restrictions when he renewed the policy, and he argues by implication that the arbitration agreement and the navigational restrictions are not a part of the policy because, he says, they were not a part of the policy in October 2003 when he paid the premium in full. Because the issue on appeal concerns only the propriety of the trial court’s order granting Markel’s motion to compel arbitration, we do not address the issues related to the navigational restrictions.
 

 The arbitration agreement reads in its entirety as follows:
 

 “IX. Arbitration
 

 “In the event that You or We disagree concerning whether any or all of the loss is covered by the policy, You and We will resolve this disagreement through arbitration. Arbitration will take place in the county where You live. It will be conducted under the rules of the American Arbitration Association unless You or We object. In that case, You will select an arbitrator and We will select other [sic] another arbitrator. The two selected arbitrators will then select a third. If the two arbitrators are unable to agree on the third arbitrator within 30 days, the judge of the court of record in the county of jurisdiction where arbitration is pending will appoint a third arbitrator.
 

 “Local court rules governing procedure and evidence will apply unless the arbitrators agree on other rules. The decision in writing of any two arbitrators will be binding on You and Us, subject to the terms of insurance. Judgment on any award may be entered in any court having jurisdiction.
 

 “You will pay the arbitrator that You choose and We will pay the arbitrator that We choose. The expense of the third arbitrator and all other expense of the arbitration will be shared equally by You and Us.”
 

 In its motion to stay proceedings and compel arbitration, Markel advised the trial court that it had issued a policy of insurance to Crews and had had a copy mailed.
 
 [3]
 
 As noted above, the policy contained a provision that allowed Crews to cancel the policy by returning it.
 

 In opposition to Markel’s motion, Crews argued that an arbitration agreement did not exist, that, even if one did exist, Mark-el had waived its right to compel arbitration under it because of the untimeliness of the motion to compel arbitration, that the arbitration agreement, if one exists, does not apply to the parties to this action other than Markel, and that the arbitration agreement, if effective, allows arbitration only to resolve a disagreement concerning whether a loss is covered and would thus not apply to Crews’s “non-contract claims ... arising from [Markel’s] tortious conduct.” The trial court granted Markel’s motion and ordered the case to arbitration; Crews appealed.
 

 Standard of Review
 

 Our review of a motion to compel arbitration is de novo.
 

 “ ‘[T]he standard of review of a trial court’s ruling on a motion to compel arbitration at the instance of
 
 either party
 
 is a
 
 de novo
 
 determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.’
 
 Ex parte Roberson,
 
 749 So.2d 441, 446 (Ala.1999). Furthermore:
 

 
 *937
 
 “‘A motion to compel arbitration is analogous to a motion for summary judgment.
 
 TranSouth Fin. Corp. v. Bell,
 
 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce.
 
 Id.
 
 “After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” ’
 

 “Fleetwood Enters., Inc. v. Bruno,
 
 784 So.2d 277, 280 (Ala.2000) (quoting
 
 Jim Burke Auto., Inc. v. Beavers,
 
 674 So.2d 1260, 1265 n. 1 (Ala.1995) (emphasis omitted)).”
 

 Vann v. First Cmty. Credit Corp.,
 
 834 So.2d 751, 752-53 (Ala.2002).
 

 Legal Analysis
 

 A. Vitality of the arbitration agreement
 

 Quoting
 
 Kenworth of Birmingham, Inc. v. Langley,
 
 828 So.2d 288, 290 (Ala.2002), Crews argues that in order to compel arbitration, Markel has the burden of proving the existence of a contract containing an arbitration agreement and proving that that contract evidences a transaction affecting interstate commerce. Crews argues that Markel failed to carry its burden of proving that a contract containing an arbitration agreement exists because, Crews says, neither he nor Markel ever signed a policy application or a policy that contained an arbitration agreement. He directed the trial court’s attention to the language on page 2 of the renewal policy that follows the words “countersigned on: 10/8/2003 by:” and two blank lines. Those words read: “In Witness Whereof, we have executed this policy, which shall not be valid unless countersigned by our duly authorized representative.” He further argues that he received the amendatory endorsement containing the arbitration agreement after he accepted the policy by paying the premium, so that there was no meeting of the minds on the arbitration agreement.
 

 In its brief on appeal Markel argues:
 

 “Crews’[s] assent to the arbitration agreement was manifested in at least one of three ways. Specifically, the arbitration agreement became part of the renewal Policy because: (1) the renewal Policy specifically authorized amendato-ry endorsements, and the arbitration endorsement accompanied the renewal Policy provided to Crews; and/or (2) Crews did not cancel the renewal Policy after receiving notice of the arbitration endorsement; and/or (3) Crews made a claim under the renewal Policy and has sued Markel for, among other things, breach of contract for denying that claim.
 

 “Crews initially manifested assent to the arbitration endorsement because the renewal Policy specifically incorporated amendatory endorsements, and the arbitration endorsement accompanied the renewal Policy provided to Crews. This Court has long recognized that endorsements are effective when they are specifically referenced in a contract.
 
 See Philadelphia American Life Ins. Co. v. Bender,
 
 893 So.2d 1104 (Ala.2004).”
 

 Markel’s brief, at 15-16.
 

 In
 
 Philadelphia American Life Insurance Co. v. Bender,
 
 893 So.2d 1104 (Ala.2004), the plaintiffs spouse signed an application for health insurance for both the plaintiff and the spouse that included a comprehensive arbitration agreement. The plaintiffs spouse was subsequently denied coverage, but a health-insurance poli
 
 *938
 
 cy was issued for the plaintiff, Bender, who paid the premiums and made claims under the policy. When the insurer denied certain claims, Bender sued the insurer, which moved the trial court for an order compelling arbitration. The motion was denied after Bender opposed the motion, claiming that he had not received the policy until two years after it was effective, that he had not signed the application containing the arbitration agreement, and that he was unaware that an arbitration agreement existed.
 

 On appeal by the insurer, this Court determined that it was undisputed that the endorsement containing the arbitration agreement was attached to the policy. The endorsement containing the arbitration agreement also stated that it was incorporated by reference into any policy or certificate issued, and the policy itself stated that its terms included any endorsements, riders, attached papers, the application, and all enrollment applications. This Court also noted that an unsigned endorsement is valid if it is attached to the policy and referenced therein. See
 
 Bender,
 
 893 So.2d at 1108 (citing
 
 Ex parte Rager,
 
 712 So.2d 333 (Ala.1998)).
 

 Markel asserts that like the policy of insurance in
 
 Bender,
 
 its renewal policy specifically references endorsements and incorporates “any endorsements” when it states that “[i]n return for the premium payment and compliance with all applicable provisions and any endorsements, we agree to provide the insurance coverage you have selected as shown on the Declarations Page, which is part of this policy.” Markel states: “[L]ike the arbitration agreement in
 
 Bender,
 
 the arbitration endorsement in this case notified Crews that it became part of the renewal Policy, stating: ‘THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.’ ... ([capitalization] in original).” Markel’s brief, at 18-19.
 

 An unsigned endorsement is valid if it is attached to the policy and is referenced in the policy. See
 
 Greene v. Hanover Ins. Co.,
 
 700 So.2d 1354, 1357 n. 3 (Ala.1997). The renewal policy clearly references “General Amendatory Endorsement YHBP 0201,” the endorsement that contains the arbitration agreement. The endorsement document itself states in bold print: “THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.” (Capitalization in original.) Crews told the trial court that he received the endorsement after he had renewed the policy. He does not argue that he had not received the endorsement before he suffered his loss, and he offers no explanation regarding his failure to reject the policy by returning it when he did receive the endorsement containing the arbitration agreement, which was his contractual remedy. “[U]nder Alabama law, [Crews] manifested [his] assent to the arbitration provision in several ways. First, [he] failed to exercise [his] right to cancel the policy. See
 
 Ex parte Rager,
 
 712 So.2d [333,] 335 (Ala.1998).... Third, [Crews] submitted a claim under the policy. See
 
 [Southern United Fire Ins. Co. v.] Howard,
 
 775 So.2d [156,] 162-63 [ (Ala.2000) ].”
 
 Southern Foodservice Mgmt., Inc. v. American Fid. Assur. Co.,
 
 850 So.2d 316, 320 (Ala.2002). We find no error in the trial court’s finding that a contract containing an arbitration agreement exists.
 

 B. Waiver of right to arbitration
 

 Crews argues that Markel waived any right it may have had to arbitrate his claims against it by virtue of its waiting 256 days after the complaint was. filed to assert its right to arbitrate, by first removing the case to federal court, and by initiating judicially supervised discovery. In
 
 *939
 
 support of his argument, Crews cites
 
 Companion Life Insurance Co. v. Whitesell Manufacturing, Inc.,
 
 670 So.2d 897, 899 (Ala.1995) (“[A] party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration.”).
 

 In its brief on appeal, Markel claims to have not only answered the complaint, but also to have asserted its right to compel arbitration in the federal court. “This fact, if so, is found in the brief, but not in the record, where, to avail, it must be.”
 
 Central of Georgia Ry. v. Ashley,
 
 159 Ala. 145, 158, 48 So. 981, 985 (1909). Markel’s brief refers to the appendices, which we have earlier declined to consider, as being “extra” to the record provided by the trial court. The notice of removal to federal court is the first response by Markel to the complaint filed by Crews contained in the record of the proceedings in state court. It makes no mention of an intent on Mark-el’s part to invoke its right to arbitrate the claims asserted in the complaint. That intent was first expressed in state court in Markel’s motions to stay proceedings and compel arbitration and to stay discovery filed on May 12, 2006.
 

 This Court has formulated a two-pronged test for determining whether a party has waived its right to compel arbitration:
 

 “It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party’s participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case.”
 

 Companion Life Insurance Co.,
 
 670 So.2d at 899. On appeal, Crews asserts that by removing the action to federal court and initiating discovery Markel abandoned its right to arbitrate in favor of the judicial process and that he would be prejudiced by an order requiring him to arbitrate. If his assertions are accurate, both prongs of the test have been satisfied.
 

 Markel responds analogizing this case to
 
 U.S. Pipe & Foundry Co. v. Curren,
 
 779 So.2d 1171 (Ala.2000), in which this Court held that a party had not substantially invoked the litigation process by removing a case to federal court when the party had asserted the affirmative defense of arbitration in its initial answer. That case is inapposite, however, because there is no evidence in the record indicating that Markel asserted arbitration as an affirmative defense against the complaint, which was filed August 29, 2005, until it filed its motion to stay the proceedings and compel arbitration on May 12, 2006, after over eight months of litigation. We need not answer this question, however, because, assuming
 
 arguendo
 
 that Markel did invoke the litigation process, Crews has been unable to show that he was substantially prejudiced.
 

 “[Wjhether there has been a waiver of a right to arbitration must be decided on a case-by-case basis.”
 
 Companion Life Insurance Co.,
 
 670 So.2d at 899. In
 
 Companion Life Insurance Co.,
 
 this Court held that the right to arbitrate had been waived when the motion to compel arbitration was filed five months after the complaint was
 
 *940
 
 filed and only after the party seeking to compel arbitration had suffered an adverse ruling in federal court.
 
 Id.
 
 There, the nonmovant demonstrated prejudice by producing an affidavit by his counsel that counsel had expended 33.4 hours of professional services to secure the remand of the case to state court, for a cost of about $4,175. He argued that he would be substantially prejudiced if ordered to arbitrate his claim.
 
 Id.
 
 Here, Crews has quantified no estimate of the time or money spent in federal court or elsewhere. He suggests that he provided significant discovery in response to requests, but the record shows only that he responded to interrogatories and a request for production, both of which were issued not by Markel, but by the other defendants.
 

 “Regarding the standard for determining prejudice, we have stated:
 

 “ ‘ “Prejudice to the party opposing arbitration, not prejudice to the party seeking arbitration, is determinative of whether a court should deny arbitration on the basis of waiver.” Price
 
 [v. Drexel Burnham Lambert, Inc.], 791
 
 F.2d [1156,] 1162 [ (5th Cir.1986) ] (footnote omitted). “Both delay and the extent of the moving party’s participation in judicial proceedings are material factors in assessing a plea of prejudice.”
 
 Frye [v. Paine, Webber, Jackson & Curtis, Inc.], 877
 
 F.2d [396,] 399 [ (5th Cir.1989) ].
 

 “ ‘ “Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate.”
 
 Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass’n,
 
 62 F.3d 1356, 1366 (11th Cir.1995). “Sufficient prejudice to infer waiver might be found, for example, if the party seeking the stay [for arbitration] took advantage of judicial discovery procedures not available in arbitration.”
 
 Carcich v. Rederi A/B Nordie,
 
 389 F.2d 692, 696 n.
 
 7
 
 (2d Cir.1968)....’
 

 “Hales v. ProEquities, Inc.,
 
 885 So.2d 100, 105-06 (Ala.2003). As Justice See noted in his dissent in
 
 Hales:
 

 “ ‘ “A party seeking to prove waiver of a right to arbitrate must demonstrate ... prejudice to the party opposing arbitration resulting from such inconsistent acts. The party arguing waiver of arbitration bears a heavy burden of proof.” ’
 

 “885 So.2d at 110 (See, J., dissenting) (quoting
 
 Britton v. Co-op Banking Group,
 
 916 F.2d 1405, 1412 (9th Cir. 1990))”
 

 Rogers v. State Farm Fire & Cas. Co.,
 
 984 So.2d 382, 387-88 (Ala.2007).
 

 In determining whether the plaintiffs in
 
 Rogers
 
 had shown substantial prejudice, this Court evaluated the amounts the plaintiffs had expended in the litigation before the defendant invoked the appraisal clause.
 
 [4]
 
 Finding that the plaintiffs had not adequately defined the expenses as applicable to the claim under consideration, this Court could not conclude that
 
 *941
 
 the plaintiffs “have carried their heavy-burden of showing substantial prejudice from [the defendant’s] delayed invocation .... ” 984 So.2d at 388. As stated above, Crews provides no evidence indicating that he has expended time or money in the litigation process; he, like the Rogers-es, has failed to carry his heavy burden of showing substantial prejudice by Markel’s delay in asserting its right to compel arbitration. Accordingly, even if,
 
 arguendo,
 
 Markel did substantially invoke the litigation process by removing the action to federal court and by seeking arbitration only after the federal court remanded the case to the state court, Crews has failed to demonstrate substantial prejudice as the result of Markel’s action. This Court has stated:
 

 “In interpreting an arbitration provision, ‘any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or
 
 an allegation of waiver,
 
 delay, or a like defense to arbitrability.’
 
 Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp.,
 
 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).”
 

 Dunes of GP, L.L.C. v. Bradford,
 
 966 So.2d 924, 927 (Ala.2007) (emphasis omitted; emphasis added).
 

 C.
 
 Scope of the arbitration agreement
 

 Crews argued to the trial court that the “language [of the arbitration agreement] drafted by defendant Markel ... does not apply to any other defendant in this action.” The arbitration agreement, quoted above, requires that “[i]n the event that You or We disagree concerning whether any or all of the loss is covered by the policy, You and We will resolve this disagreement through arbitration.” It goes no further, and it references no other parties. The order of the trial court stated as follows in the case styled as
 
 Thomas C. Crews, Plaintiff v. National Boat Owners Association (NBOA) Marine Insurance Agency, Inc.; et al. Defendants :
 

 “This matter having come before this Court on Defendant Markel American Insurance Company’s Motion to Compel Arbitration and Stay Proceedings, it is hereby:
 

 “ORDERED, ADJUDGED, and DECREED AS FOLLOWS:
 

 “1. The Motion to Compel Arbitration is
 
 granted with respect to all claims presented in this action;
 
 and
 

 “2. Arbitration shall proceed pursuant to the contract of insurance issued by Markel American Insurance Company to Plaintiff Thomas Crews, a copy of which is attached to the complaint; and
 

 “3. The Motion to Stay is granted with respect to all proceedings before this Court relating to this cause pending the completion of the
 
 arbitration of all claims presented in this action.”
 

 (Capitalization in original; emphasis added.)
 

 This Court has held:
 

 “A party to a contract can be forced to arbitrate only those issues he or she specifically agrees to submit to arbitration.
 
 First Options of Chicago, Inc. v. Kaplan,
 
 514 U.S. 938, 943-44, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). General rules of contract interpretation require that the intent of the parties be derived from the words of the contract, unless an ambiguity exists.
 
 Loerch v. National Bank of Commerce,
 
 624 So.2d 552 (Ala.1993).”
 

 Ryan Warranty Servs., Inc. v. Welch,
 
 694 So.2d 1271, 1273 (Ala.1997). The arbitration agreement by its terms extends to Crews and Markel, the parties to the insurance policy in which the agreement was
 
 *942
 
 included. The arbitration agreement exists to provide a nonjudicial means to determine whether coverage for a given loss exists under the policy, and because all the claims in the complaint arise out of Mark-el’s denial of coverage, those claims could be resolved by the arbitration of the loss-coverage issue.
 

 We hold, however, that Crews waived on appeal the issue of NBOA’s and Ashe’s standing to compel arbitration under the arbitration agreement when he failed to argue the issue in his opening brief. “When an appellant fails to argue an issue in its [initial] brief, that issue is waived.”
 
 Boshell v. Keith,
 
 418 So.2d 89, 92 (Ala.1982).
 

 The trial court extended its order to all claims presented in the action and included the claims against the other defendants, who are not signatories to the contract containing the arbitration agreement. Inasmuch as this aspect of the order was not challenged on appeal, we affirm the order of the trial court that all claims presented in the action be arbitrated.
 

 Conclusion
 

 The arbitration agreement is a part of the policy of insurance issued by Markel to Crews. Although Markel availed itself of the litigation process, it did not, by doing so, waive the right to arbitration because Crews has not demonstrated that he was substantially prejudiced by Markel’s actions. The order of the trial court staying all proceedings relating to the cause pending the completion of the arbitration of all claims presented in this action is affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, and SHAW, JJ., concur.
 

 [1]
 

 . During the pendency of this appeal the parties collectively filed with this Court several motions to strike. All the motions were intended to strike from the briefs documents and related arguments that were not included in the record. We do not address the motions because most concerned documents that are not applicable to our consideration of the propriety of the order compelling arbitration; the rest were not used in our deliberations.
 

 [2]
 

 . 28 U.S.C. § 1446(b) provides: "The notice of removal of a civil action ... shall be filed within thirty days after the receipt by the defendant ... of a copy of the initial pleading. ...” Markel filed its notice of removal on November 1, 2005, more than 30 days after it received the complaint on September 12, 2005. Ashe and NBOA were served on September 10, 2005.
 

 [3]
 

 . Markel noted in its motion that the motion was based on the same policy and General Amendatory Endorsement section that Crews had included in his complaint.
 

 [4]
 

 . The clause under consideration in
 
 Rogers
 
 was an appraisal clause, but the Court applied the standard for determining whether there had been a waiver of the right to invoke an arbitration agreement. There, this Court said:
 

 "Although this Court has never ruled on what standard should be applied to determine whether there has been a waiver of the right to invoke an appraisal clause in an insurance policy, the former Court of Appeals previously indicated that the same standard applies to both appraisal and arbitration clauses. See
 
 Chambers v. Home Ins. Co. of New York,
 
 29 Ala.App. 34, 37, 191 So. 642, 644 (1939).”
 

 Rogers,
 
 984 So.2d at 386.