HALL, Judge.
This controversy had its inception in a suit in workmen’s compensation brought by Joseph G. Greaves against his employer, Perez Iron Works Inc., as the result of an injury received by him on July 5, 1961. The defendant in suit, Perez Iron Works Inc., and Manuel Perez Jr., individually and as president of Perez Iron Works Inc. (hereinafter referred to collectively as “Perez”) filed an answer to the compensation suit and coupled with it a third party petition against Lumbermens Mutual Casualty Company, Charles E. Dickey d/b/a Dickey & Tros-clair, and David W. Durkes, praying for judgment over against third party defendants for all compensation benefits theretofore paid by Perez to Greaves and which Perez might be held liable to pay to him as a result of the accident of July 5, 1961. Greaves thereupon, by supplemental petition joined as party defendants to his compensation suit the third party defendants named by Perez. Third party defendants answered both the compensation suit and the third party petition of Perez, and in addition one of them, viz., Charles E. Dickey d/b/a Dickey & Trosclair reconvened against Perez for $486.66.
Before the case went to trial on the merits Greaves’ compensation claim was *207 compromised but without prejudice to the rights of any party to Perez’ third party action. The compromise was duly approved by the Trial Court and this portion of the litigation passed out of the picture.
The third party action, being what remained of the litigation, was subsequently tried on the merits and resulted in a judgment dismissing all of Perez’ claims and a further judgment in reconvention in favor of Charles E. Dickey, d/b/a Dickey & Tros-clair against Perez in the sum prayed for. Perez appealed.
In the third party action Perez alleged that Lumbermens Mutual Casualty Company had issued a workmen’s compensation insurance policy to him covering the period from January 1, 1961 to January 1, 1964; that Lumbermens made an attempt to cancel the policy but the cancellation was ineffective “because there was no actual refund of the cancelled premiums.” Instead, Perez alleged, the unearned premiums were forwarded to Dickey & Trosclair Insurance Agency, Lumbermens’ Resident Agent, but were never actually refunded to him. Perez further alleged that when he heard of the proposed cancellation he informed Mr. David W. Durkes, manager of the Dickey 8¿ Trosclair insurance agency that he had to have workmen’s compensation coverage, and that Durkes whose employer had retained the unearned premiums stated to him “Go on and work, you are covered;” that this was not an actual return of the unearned premiums as contemplated by the statute and therefore the Lumbermens’ policy was still in effect at the time Greaves was injured.
In the alternative, Perez alleged that a new policy came into force when Durkes, as manager of ' Lumbermens’ Resident Agent, accepted the unearned premiums and stated “Go on and work, you are covered.” Perez further alleged that he was not informed that he had no compensation coverage until some time after Greaves’ accident
In the further alternative, Perez alleged that he had a right to rely on the representations of Durkes; that the third party defendants owed him a duty to obtain workmen’s compensation coverage or to inform him of the fact that they had not secured such coverage, and that having done neither they are liable to him in damages for all compensation payments, medical bills and attorney’s fees arising out of the accident to Greaves on July 5, 1961.
The record reveals the following facts:
In January 1961 Lumbermens Mutual Casualty Company wrote a one year compensation insurance policy ' for Perez through the Dickey & Trosclair insurance agency. The initial estimated or advance premium was to be financed through the “Kemper Finance Plan” with Perez paying the down payment of $167.85 to the Dickey & Trosclair agency and agreeing to pay Kemper the balance in ten equal monthly installments of $56.00. The policy contained the usual audit provisions for the ultimate determination of the premium. Perez made the down payment to Dickey & Tros-clair but became delinquent in his payments to the Kemper Insurance Plan and did not make the March and April payments until May 9 when he sent his check for $112.00 to Kemper Insurance Plan covering these two months.
Meanwhile, Lumbermens had learned about certain undisclosed hazards of Perez’ business and on May 8 had issued notices of cancellation of its policy, effective May 22. Foll'ow-up notices were mailed May 10. Perez admits that he received notices of cancellation on or about May Í0, and understood that his compensation policy was can-celled effective May 22.
After receiving such notices Perez telephoned Durkes, manager of the Dickey & Trosclair agency, and asked that Durkes *208 come to his office to discuss what could be done under the circumstances. Sometime between May 10 and May 22 Durkes called at Perez’ shop and a conversation took place between them. What was said during this conversation is one of the factual issues in the case.
Perez’ check for $112.00 dated May 9, 1961 payable to the order of Kemper Insurance Plan was deposited to the account of Dickey & Trosclair on May 18, 1961, and credited to Perez’ premium account.
Sometime after May 22 Lumbermens audited Perez’ payrolls and calculated the developed premium due on its policy up to May 22, the effective date of cancellation. Dickey & Trosclair, as it was obligated to do, paid the amount of the developed premium to Lumbermens and charged it to Perez’ premium account. This resulted in a net balance of $486.66 due by Perez to Dickey & Trosclair.
The issues are entirely factual. The principal dispute is with regard to what was said during the conversation between Perez and Durkes which took place in Perez’ office sometime between May 10 and May 22. Perez testified that he told Durkes he had received a notice of cancellation from Lumbermens and told him that: “ * * * I had to have this insurance on account if anybody gets hurt I’ll be in bad shape * * * ” He further testified that Durkes replied that he had a check for $112.00 that had come back to Dickey & Trosclair from Kemper Insurance Plan and that he would take the check and get Perez some more insurance. He quoted Durkes’ reply as being: “Well, okay, I’ll take this check and get you some insurance. Go ahead and work, you’ll be covered.” Perez further testified that he relied on this statement and was not informed that he had no compensation coverage until some time after the accident to Greaves.
Durkes’ version of the conversation is that he told Perez he was covered under the Lumbermens’ policy until May 22; that he (Durkes) did not represent any other companies which wrote compensation insurance, but that he would see if he could get coverage through some other agent. Durkes further testified that he made an effort to do so but was unsuccessful and so notified Perez “a couple of days later.”
Appellants, citing Arceneaux v. Bellard, La.App., 149 So.2d 444, argue that when Durkes retained the check for $112.00 and stated “Go on and work, you are covered” an insurance policy came into being. Alternatively appellants argue that Durkes and his employer became liable in damages to him when Durkes undertook to procure other insurance and failed to notify him seasonably of his inability to do so.
The issue here is purely one of fact. The Trial Judge believed Durkesr version of the conversation with Perez. He also found as a fact that Durkes notified Perez promptly of his inability to obtain insurance through another agent. We find no manifest error in the Trial Judge’s appreciation of the evidence. As to any liability on the part of Lumbermens Mutual Casualty Company it is undisputed that its policy was cancelled as of May 22, 1961 and that Perez received due and timely notice of the cancellation. No question of the return to Perez of unearned premiums is-involved because there were no unearned premiums. In fact Perez, after the developed premium was calculated, owed Dickey S¿ Trosclair a balance of $486.66 on his premium account.
For the foregoing reasons the judgment appealed from is affirmed, costs of this appeal to be borne by appellants.
Affirmed.