Rel: March 7, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in Southern Reporter.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0684
_____

### Ex parte M.P.

### PETITION FOR WRIT OF CERTIORARI
### TO THE COURT OF CIVIL APPEALS

### (In re: W.C.M.

### v.

### M.P.)

### (Baldwin Juvenile Court: JU-19-510.02;
### Court of Civil Appeals: CL-2023-0615)

WISE, Justice.

M.P. ("the mother") petitioned this Court for a writ of certiorari to

review the Court of Civil Appeals' decision in W.C.M. v. M.P., [Ms. CL-

2023-0615, July 19, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024), which reversed the Baldwin Juvenile Court's judgment terminating the parental rights of W.C.M. ("the father") to the parties' child, E.H.P. ("the child"). We granted certiorari review to consider whether the Court of Civil Appeals' decision in this case conflicts with prior caselaw holding that appellate courts will not address arguments that have been raised for the first time in an appellant's reply brief.

Facts and Procedural History

In July 2021, the mother filed a petition in the Baldwin Juvenile Court seeking to terminate the father's parental rights to the child. After conducting a trial over four sessions between August 2021 and July 2023, the juvenile court entered a judgment terminating the father's parental rights. The father appealed to the Court of Civil Appeals.

In an opinion authored by Judge Edwards, the Court of Civil Appeals reversed the juvenile court's judgment and remanded the case for proceedings consistent with that opinion. W.C.M., ___ So. 3d at ___. Presiding Judge Moore concurred specially, with an opinion. Judge Lewis concurred in the result, without an opinion. Judge Fridy dissented, with an opinion, which Judge Hanson joined.

2

The main opinion included the following:

"On appeal, the father argues that the mother failed to establish that he had abandoned the child or that all viable alternatives to the termination of his parental rights were exhausted. He also relies on the following statement from Ex parte J.E., 1 So. 3d 1002, 1013 (Ala. 2008) (Cobb, C.J., concurring specially) (quoting A.J.H.T. v. K.O.H., 983 So. 2d 394, 407 (Ala. Civ. App. 2007) (Moore, J., concurring in part and dissenting in part)): 'Courts of this State have often found that "termination of parental rights is not appropriate in cases ... in which the children are safely residing with the custodial parent and the continuation of the noncustodial parent's parental rights does not present any harm" to the children's best interests. ...' In his reply brief, he expands that argument, relying on this court's opinion in W.W. v. H.W., 384 So. 3d 663, 670 (Ala. Civ. App. 2023), in which we explained that, even when a noncustodial parent has abandoned a child, a 'juvenile court [is] still required to consider whether the termination of [that parent's] parental rights would serve the child's best interest.'"

W.C.M., ___ So. 3d at ___. The main opinion ultimately concluded that "the juvenile court's judgment is not supported by evidence indicating that termination of the father's parental rights would serve the child's best interest" and that, in light of that conclusion, "we need not examine whether the evidence was sufficient to support the juvenile court's conclusion that the mother proved grounds for the termination of the father's parental rights." W.C.M., ___ So. 3d at ___. Thus, the Court of

3

Civil Appeals reversed the juvenile court's judgment and remanded the case for the entry of a judgment consistent with that opinion.

In his special concurrence, Presiding Judge Moore stated:

"I concur that the judgment of the Baldwin Juvenile Court ('the juvenile court') should be reversed because the record lacks evidence indicating that it would advance the best interests of the child. I write specially to note that Rule 28(a)(10), Ala. R. App. P., is not, and should not be, inflexibly applied to prevent this court from considering issues impacting the rights, interests, and welfare of the children before the court in appeals from judgments terminating parental rights.

"Rule 28(a)(10) provides that the brief of an appellant shall include '[a]n argument containing the contentions of the appellant … with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.' In Ex parte Borden, 60 So. 3d 940, 943 (Ala. 2007), our supreme court explained that Rule 28(a)(10), which requires legal argument with citation to authorities, is intended 'to conserve the time and energy of the appellate court and to advise the opposing party of the points he or she is obligated to make.' If an appellate brief adequately frames the issue presented in the appeal so that the appellate court and the opposing party can discern the argument being made against the judgment, the failure to cite 'an abundance of legal authority' does not result in waiver of the issue under Rule 28(a)(10). Roberts v. NASCO Equip. Co., 986 So. 2d 379, 383 (Ala. 2007). In fact, our supreme court has held that, under the foregoing circumstances, the appellate courts of this state can review the merits of an appeal even when no legal authority has been cited. Kirksey v. Roberts, 613 So. 2d 352, 353 (Ala. 1993) (holding that noncompliance with Rule 28 may be excused when the appellate court is 'able to adequately discern the

4

issue [the appellant] presents, in spite of his failure to present authorities in support of his claim').

"In the 'argument' section of his opening brief, W.C.M. ('the father') quotes the following passage from Chief Justice Sue Bell Cobb's special concurrence in Ex parte J.E., 1 So. 3d 1002 (Ala. 2008):

"'Courts of this State have often found that "termination of parental rights is not appropriate in cases ... in which the children are safely residing with the custodial parent and the continuation of the noncustodial parent's parental rights does not present any harm" to the children's best interests, and that, in many cases, "a less drastic alternative, usually maintaining the status quo, is viable and should be utilized."'

"1 So. 3d at 1013-14 (Cobb, C.J., concurring specially) (quoting A.J.H.T. v. K.O.H., 983 So. 2d 394, 407 (Ala. Civ. App. 2007) (Moore, J., concurring in part and dissenting in part (citing in turn Sutton v. Elrod, 724 So. 2d 551 (Ala. Civ. App. 1998); In re Beasley, 564 So. 2d 959 (Ala. Civ. App. 1990); Miller v. Knight, 562 So. 2d 274 (Ala. Civ. App. 1990); Talley v. Oliver, 628 So. 2d 690 (Ala. Civ. App. 1993); S.M.W. v. J.M.C., 679 So. 2d 256 (Ala. Civ App. 1996); and Thornton v . Thornton, 519 So. 2d 960 (Ala. Civ App. 1987))).

"That passage delineates that the termination of parental rights is not appropriate when a child is safely residing with a custodial parent who is meeting the child's need for stability and permanency and the noncustodial parent does not present a danger to the safety and welfare of the child. In such cases, the appropriate course is to maintain the status quo by denying the petition for termination of the noncustodial parent's parental rights and leaving the child in the satisfactory care of the custodial parent because the best

interests of the child are being adequately served by that parent.

"The father did not elaborate further on that point in his opening brief.  In her responsive brief, M.P. ('the mother'), relying heavily on C.C. v. L.J., 176 So. 3d 208 (Ala. Civ. App. 2015), argued that the juvenile court had not erred in terminating the father's parental rights because, she said, the juvenile court did not have to consider maintaining the status quo as a viable alternative after finding that the father had abandoned the child.  In his reply brief, the father, citing primarily W.W. v. H.W., 384 So. 3d 663 (Ala. Civ. App. 2023), responded to the mother's argument by maintaining that, even in cases of abandonment, in which viable alternatives need not be explored, a juvenile court must still find that the termination of parental rights serves the best interests of the child.  The father contended, consistent with his citation to Chief Justice Cobb's writing in Ex parte J.E., that the termination of his parental rights was not appropriate because the child can safely reside with the mother and the continuation of his parental rights does not threaten the child's security, stability, and permanency interests, noting that the termination of his parental rights was not being accomplished to facilitate the adoption of E.H.P. ('the child') by another man.

"Even considering the father's citation to Chief Justice Cobb's writing in Ex parte J.E. in his opening brief in complete isolation, it is apparent that the father was arguing that termination of his parental rights was inappropriate because it was in the best interests of the child that the custodial status quo continue.  The mother understood that argument because she responded to it by asserting that termination of the father's parental rights was appropriate because the juvenile court found that the father had abandoned the child, and the juvenile court did not have to consider maintenance of the status quo as a viable alternative

6

to termination based on that abandonment. The father appropriately countered that argument in his reply brief by responding that, even in cases of abandonment, the juvenile court still had to find that termination served the best interests of the child.

"In this case, the main opinion does not create an argument for the father or excuse the father from complying with Rule 28(a)(10). The father at least minimally complied with the rule, but even if he did not, his noncompliance did not prevent the mother from responding to his argument or preclude him from expanding on his point in his reply brief when responding to her argument."

W.C.M., ___ So. 3d at ___-___ (Moore, P.J., concurring specially). In his dissent, which Judge Hanson joined, Judge Fridy stated, in pertinent part:

"W.C.M. ('the father') did not argue in his opening brief that M.P. ('the mother') failed to offer clear and convincing evidence that terminating his parental rights was in the best interest of E.H.P. ('the child'). Indeed, nothing he writes in his opening brief even approaches such an argument. Nevertheless, the main opinion creates that very argument for the father. Because I do not think an appellate court should reverse a lower court's judgment on grounds not properly raised to it, and because I conclude that the arguments that the father does properly raise to this court do not warrant reversal, I respectfully dissent.

"….

"In the first paragraph of the argument section of his opening brief, the father sets forth what he calls 'general principles.' Among those 'general principles' is the following

7

quote from Chief Justice Cobb's special concurrence in <u>Ex parte J.E.</u>, 1 So. 3d 1002, 1013-14 (Ala. 2008):

> "'Courts of this State have often found that "termination of parental rights is not appropriate in cases ... in which the children are safely residing with the custodial parent and the continuation of the noncustodial parent's parental rights does not present any harm" to the children's best interests, and that, in many cases, "a less drastic alternative, usually maintaining the status quo, is viable and should be utilized."'

"(Citations omitted.) Nowhere in his initial brief does the father apply this 'general principle' about a child's best interest to the facts of this case. And at no point in that brief does he seek a reversal of the judgment of the Baldwin Juvenile Court ('the juvenile court') for any reason related to the evidence regarding the child's best interest. The main opinion all but concedes the father's failure in this regard. When describing the father's arguments on appeal, the main opinion notes only, as to the child's best interest, that the father quoted Chief Justice Cobb's nonbinding special concurrence quoted above. It points to none of the father's own language setting forth an argument relating to the child's best interest -- because there is no such language in the father's initial brief at which to point.

"It is axiomatic that an appellate court will not reverse a lower court's judgment based on an argument that the appellant has not presented in the opening brief. <u>See</u> <u>Boshell v. Keith</u>, 418 So. 2d 89, 92 (Ala. 1982) ('When an appellant fails to argue an issue in its brief, that issue is waived.'). No less authority than the United States Supreme Court has explained why:

> "'In our adversary system, in both civil and criminal cases, in the first instance and on appeal,

we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a <u>pro se</u> litigant's rights. <u>See</u> <u>Castro v. United States</u>, 540 U.S. 375, 381-383 (2003). But as a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." <u>Id.</u>, at 386 (SCALIA, J., concurring in part and concurring in judgment). As cogently explained:

> "'"[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. [...]" <u>United States v. Samuels</u>, 808 F.2d 1298 1301 (C.A.8 1987) (R. Arnold, J., concurring in denial of reh'g en banc).'

"<u>Greenlaw v. United States</u>, 554 U.S. 237, 243-44 (2008) (footnotes omitted).

"Despite such well settled law, the main opinion crafts for the father a legal argument, fleshing out a single quotation that he himself described as a 'general principle' of law, a principle that he never developed into even a cursory legal argument. In fact, aside from that single general principle, the father never mentions the best interest of the child in his opening brief.

9

"In creating an entire legal argument on behalf of the father, the main opinion has failed to adhere to our proper function to serve as arbiters of the law and instead has unfairly taken up the mantle of advocate for one of the parties appearing before us. Not only is this unfair to the mother, the appellee in this case, it is unfair to litigants in any other matter in which an appellate court has identified an issue, but, because that issue was not argued in the appellant's opening brief, has declined to address it. See, e.g., Archer v. America's First Fed. Credit Union, 290 So. 3d 829, 832 (Ala. Civ. App. 2019); S.S. v. Jefferson Cnty. Dep't of Hum. Res., 154 So. 3d 1049, 1052-53 (Ala. Civ. App. 2014); Crews v. National Boat Owners Ass'n Marine Ins. Agency, Inc., 46 So. 3d 933, 942 (Ala. 2010); Davant v. United Land Corp., 896 So. 2d 475, 487 (Ala. 2004); Deutsch v . Birmingham Post Co., 603 So. 2d 910, 911 (Ala. 1992); Boshell v . Keith, 418 So. 2d 89, 92 (Ala. 1982).

"Ignoring the guiding principle that precludes us from creating arguments on behalf of a party damages the integrity of this court's role as an impartial arbiter of the cases that come before us. Reversing a judgment on a ground that an appellant has not argued creates uncertainty for future appellees, who may now feel the need to guess what issues this court might develop on its own initiative. It also places this court in the predicament of determining which future cases are 'worthy' of our intercession regardless of what arguments the appellant makes.

"The main opinion posits that this court is 'reluctant' to affirm a judgment terminating the parental rights of a noncustodial parent when a child is safely residing with the custodial parent. But that is no reason to ignore our job as appellate judges to address only those questions properly raised to us. There is no doubt that cases involving the fundamental rights of parents and the protection and rearing of children are among the most difficult cases that trial courts and appellate courts face. But it is precisely when the stakes

10

are high and the issues weighty that the rules requiring our neutrality and preventing us from advocating for the parties are most important. Of course, the result of tethering ourselves to the arguments that the parties present to us will, on occasion, lead to results that the members of this court will not personally like. But, to paraphrase a well-known quote from former Associate Justice of the United States Supreme Court Antonin Scalia, if we liked all the results we reached, we would indeed be doing our jobs quite poorly. We would, in effect, be imposing our will on the parties rather than our judgment.

"To be sure, as the main opinion points out, the father, in his reply brief, does make the best-interest argument on which the main opinion bases its reversal of the juvenile court's judgment. But this court should never reverse a trial court's judgment based on an argument appearing only in a reply brief, and the main opinion is wrong to do so here. Why? Because, as we have often written, arguments made for the first time in a reply brief, like the father's best-interest argument here, are waived. Huntley v. Regions Bank, 807 So. 2d 512, 516 n.2 (Ala. 2001); see also Verano Alabama, LLC v. Alabama Med. Cannabis Comm'n, [Ms. CL-2023-0831, Apr. 19, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024). Such a rule makes sense in light of the fundamental unfairness to an appellee who, armed with only a single brief sandwiched between the appellant's initial and reply briefs, is unable to respond to arguments raised for the first time in the reply brief. See Magers v. Alabama Women's Ctr. Reprod. Alts., LLC, 325 So. 3d 788, 790 (Ala. 2020) (noting the 'unfair advantage' to an appellant were the appellant allowed to make arguments for the first time in a reply brief, leaving the appellee 'without an opportunity to counter' such arguments).

"The main opinion's decision to create the father's argument runs afoul of other important and equally well-settled appellate principles as well. For example, an appellate court should not accept the citation of a general principle of

11

law as sufficient legal grounding for an argument urging reversal because '[a]uthority supporting only "general propositions of law" does not constitute a sufficient argument for reversal.' Beachcroft Props., LLP v. City of Alabaster, 901 So. 2d 703, 708 (Ala. 2004) (quoting Geisenhoff v. Geisenhoff, 693 So. 2d 489, 491 (Ala. Civ. App. 1997)). Moreover, even if a general principle of law from a nonbinding special concurrence constituted a statement of an argument, such an 'argument' would be insufficient to merit appellate court consideration under our Rule 28(a)(10), Ala. R. App. P., which 'requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived.' White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008). Or, as the United States Court of Appeals for the First Circuit has put it: 'It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.' United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). In short, 'we cannot create legal arguments for a party based on undelineated general propositions unsupported by authority or argument.' Spradlin v. Spradlin, 601 So. 2d 76, 79 (Ala. 1992). Here, the father's initial brief lacks both authority and argument on the issue on which the main opinion reverses the juvenile court's judgment.

"In his special concurrence, Presiding Judge Moore explains that this court should not apply the requirements of Rule 28(a)(10) inflexibly when issues impacting children are involved in the appeal. But that contention fails to confront the reason the main opinion is wrong in this case to reverse the juvenile court's judgment. The point is not that the father has transgressed some rule of procedure; it's that this court has decided to create for him an argument that he did not make and then reverse the juvenile court's judgment based on that argument. Strip Rule 28(a)(10) from our Rules of Appellate Procedure, and the point would still remain: we do

12

not create arguments for parties, we do not look for reasons on our own to reverse a trial court's judgment, and we do not engage in plain-error review.

"To be sure, after pointing out that the main opinion has improperly created the argument on which it reverses the juvenile court's judgment, I note additional, rules-based problems with the father's initial brief that the main opinion's approach creates -- such as the failures of the initial brief to contain sufficient legal authority and sufficient argumentation supporting the basis of the main opinion's decision to reverse the juvenile court's judgment. But those failures stem not from the father's decision of how best to argue his case in his initial brief but, instead, from the fact that the main opinion, having created an argument for the father, thereby created the additional requirements that the initial brief support that created argument with legal authority and argumentation, which, of course, the initial brief failed to do.

"The special concurrence is wrong to suggest that the mother understood the father to be making a best-interest argument because she responded to the father's viable-alternatives argument by contending, correctly, that a juvenile court need not consider viable alternatives to the termination of a parent's rights when it has found that a parent has abandoned the child. See J.C.L. v. J.B.L., 370 So. 3d 254, 263 (Ala. Civ. App. 2022). There is simply no plausible way one can glean from the mother's brief that she understood the father to be arguing in his initial brief that, even if he had abandoned the child, she still had failed to prove that it was in the child's best interest to terminate his parental rights. Why? Because nowhere in her brief does she address any such argument. Indeed, the father's arguments in his initial brief were quite plain: (1) he did not abandon the child; and (2) there were viable alternatives to the termination of his parental rights. It is in no way 'apparent,' as the special concurrence posits, 'that the father was arguing that

13

termination of his parental rights was inappropriate because it was in the best interests of the child that the custodial status quo continue.' W.C.M., ___ So. 3d at ___ (Moore, P.J., concurring specially). If anything, the father's argument in his initial brief focuses only on his own rights, not on the child's best interests. And certainly nothing the mother argued in her initial brief in responding to the father's viable-alternatives argument opened the door to the father's best-interest argument in his reply brief, given that those are two distinct issues. See J.G. v. Lauderdale Cnty. Dep't of Hum. Res., 379 So. 3d 444, 453 (Ala Civ. App. 2023) (Moore, J., concurring specially) (noting the three distinct things a petitioner must prove to support the termination of parental rights: '(1) a ground for termination, (2) that no viable alternative to termination of parental ' rights exists, and (3) that termination of parental rights is in the best interest of the child'); Ex parte Bodie, 377 So. 3d 1051, 1064, 1067-69 (Ala. 2022) (Parker, C.J., concurring in part and concurring in the result) (explaining that, in determining whether to terminate parental rights, the question of the child's best interest is analyzed separately from the question of whether there are viable alternatives to termination).

"In sum, the father did not adequately present an argument to this court in his opening brief regarding whether the termination of his parental rights was in the child's best interest. Therefore, I believe that reversing the judgment on that ground exceeds this court's authority. Instead, I would address … the issues that the father properly presented to this court for our review."

W.C.M., ___ So. 3d at ___-___.

The mother's petition for the writ of certiorari followed.

14

## Standard of Review

"'"'On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.'"'

"Ex parte S.L.M., 171 So. 3d 673, 677 (Ala. 2014) (quoting Ex parte Helms, 873 So. 2d 1139, 1143 (Ala. 2003), quoting in turn Ex parte Toyota Motor Corp., 684 So. 2d 132, 135 (Ala. 1996))."

Ex parte Housing Auth. of City of Talladega, [Ms. SC-2023-0537, May 24, 2024] ___ So. 3d ___, ___ (Ala. 2024).

## Discussion

In the mother's brief in support of her petition for the writ of certiorari ("mother's brief"), the mother argues:

"The Main and Specially Concurring Opinions['] reliance on argument set forth in a reply brief directly conflicts with case precedent which has held when an argument is not made in the appellant's original brief, the courts have declined to address it. See, e.g., Archer v. America's First Fed. Credit Union, 290 So. 3d 829, 832 (Ala. Civ. App. 2019); S.S. v. Jefferson Cnty. Dep't of Hum. Res., 154 So. 3d 1049, 1052-53 (Ala. Civ. App. 2015); Crews v. National Boat Owner's Ass'n Marine Ins. Agency, Inc., 46 So. 3d 933, 942 (Ala. 2010); Davant v. United Land Corp., 896 So. 2d 475, 487 (Ala. 2004); Deutsch v. Birmingham Post Co., 603 So. 2d 910, 911 (Ala. 1992); Boshell v. Keith, 418 So. 2d 89, 92 (Ala. 1982)."

Mother's brief, p. 53. Specifically, the mother argues that the Court of Civil Appeals erred in reversing the juvenile court's judgment on the ground that she had not presented "evidence indicating that the child's best interest would be served by terminating the father's parental rights" because, she says, the father had raised that argument for the first time in his reply brief. <u>W.C.M.</u>, ___ So. 3d at ___.

This case involves the mother's petition to terminate the parental rights of the father.

> "A juvenile court may terminate parental rights only when the petitioner presents clear and convincing evidence showing: (1) grounds for termination, <u>see</u> § 12-15-319(a), Ala. Code 1975, (2) the absence of a viable alternative to termination, and (3) that the termination will serve the best interests of the child. <u>See</u> <u>J.A. v. S.L.</u>, [Ms. CL-2023-0576, June 28, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024)."

<u>R.D. v. G.A.W.</u>, [Ms. CL-2024-0344, Nov. 1, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024). The mother argued, and the juvenile court found, that the father had abandoned the child. The Court of Civil Appeals has held:

> "Because the father abandoned the child, the juvenile court was not required to determine whether viable alternatives to the termination of his parental rights existed. <u>See</u> <u>W.W. v. H.W.</u>, 384 So. 3d 663, 670 (Ala. Civ. App. 2023). As we explained in <u>W.W.</u>, '"'[b]y abandoning [his] child, [the father] "lost any due-process rights that would have required the juvenile court to explore other alternatives before terminating [his] parental rights."'"' 384 So. 3d at 670

16

(quoting T.T. v. C.E., 204 So. 3d 436, 439 (Ala. Civ. App. 2016), quoting in turn L.L. v. J.W., 195 So. 3d 269, 274 (Ala. Civ. App. 2015), quoting in turn C.C. v. L.J., 176 So. 3d 208, 217 (Ala. Civ. App. 2015)). Because the father abandoned the child, the juvenile court was not required to consider whether maintenance of the status quo would be a viable alternative to the termination of the father's parental rights, and it erred in doing so.

"We have further explained, however, that, even when a parent has abandoned his or her child, a juvenile court must still 'consider whether the termination of the [parent's] parental rights would serve the child's best interest.' W.W., 384 So. 3d at 670."

Morgan ex rel. K.J.W. v. T.R.W., [Ms. CL-2024-0273, Dec. 13, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024) (footnotes omitted).

In this case, the Court of Civil Appeals ultimately reversed the juvenile court's judgment on the ground that "[t]he mother presented no evidence indicating that the child's best interest would be served by terminating the father's parental rights." W.C.M., ___ So. 3d at ___. The threshold question in this case is whether the father actually raised that argument in his opening appellant's brief in the Court of Civil Appeals ("appellant's brief"). The main opinion in W.C.M. stated:

"On appeal, the father argues that the mother failed to establish that he had abandoned the child or that all viable alternatives to the termination of his parental rights were exhausted. He also relies on the following statement from Ex parte J.E., 1 So. 3d 1002, 1013 (Ala. 2008) (Cobb, C.J.,

concurring specially) (quoting A.J.H.T. v. K.O.H., 983 So. 2d 394, 407 (Ala. Civ. App. 2007) (Moore, J., concurring in part and dissenting in part)): 'Courts of this State have often found that "termination of parental rights is not appropriate in cases ... in which the children are safely residing with the custodial parent and the continuation of the noncustodial parent's parental rights does not present any harm" to the children's best interests. ...' In his reply brief, he expands that argument, relying on this court's opinion in W.W. v. H.W., 384 So. 3d 663, 670 (Ala. Civ. App. 2023), in which we explained that, even when a noncustodial parent has abandoned a child, a 'juvenile court [is] still required to consider whether the termination of [that parent's] parental rights would serve the child's best interest.'"

___ So. 3d at ___. "Rule 28(a)(10), Ala. R. App. P., provides that the argument section of the appellant's brief shall set out 'the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.'" Ex parte Borden, 60 So. 3d 940, 943 (Ala. 2007).

In his appellant's brief, the father argued: "Mother failed to present clear and convincing evidence that Father 'abandoned' his Child, or that Father's parental rights should be terminated." Appellant's brief, p. 15. His argument included a section title titled "General Principles," which stated:

18

"'The termination of parental rights is an extreme matter and is not to be considered lightly.' S.M.W. v. J.M.C., 679 So. 2d 256, 258 (Ala. Civ. App. 1996), citing Ex parte Beasley, 564 So. 2d 950 (Ala. 1990). A juvenile court should not terminate parental rights except in the most egregious circumstances because those rights, once terminated, cannot be reinstated. P.H. v. Madison County Dept. of Human Resources, 937 So. 2d 525, 531 (Ala. Civ. App. 2006) (citation omitted); accord Ex parte Beasley, 564 So. 2d 950, 952 (Ala. 1990) ('Inasmuch as the termination of parental rights strikes at the very heart of the family unit, a court should terminate parental rights only in the most egregious of circumstances.'). 'Courts of this State have often found that "termination of parental rights is not appropriate in cases ... in which the children are safely residing with the custodial parent and the continuation of the noncustodial parent's parental rights does not present any harm" to the children's best interests, and that, in many cases, "a less drastic alternative, usually maintaining the status quo, is viable and should be utilized."' Ex parte J.E., 1 So. 3d 1002, 1013-1014 (Ala. 2008) (Cobb, C.J., concurring specially) (citations omitted)."

Appellant's brief, pp. 15-16 (emphasis added). This is the only reference to the child's best interest included in the appellant's brief. The father went on to argue:

"The Mother failed to meet her burden of proof. The Mother's burden is substantial. Where, as here, one parent seeks to terminate the parental rights of another parent, the juvenile court must first determine whether grounds exist for the termination of parental rights by considering evidence relating to the factors enumerated in § 12-15-319(a), Ala. Code 1975. If that hurdle is cleared, the juvenile court must then consider whether all viable alternatives to terminating parental rights have been exhausted. Ex parte J.E., 1 So. 3d 1002, 1006-1008 (Ala. 2008)."

Appellant's brief, p. 16. The father then argued that the only factor the mother relied upon was that he had abandoned the child, see § 12-15-319(a)(1), Ala. Code 1975; that the "[m]other failed to present clear and convincing evidence that [the father had] abandoned his [c]hild"; and that the "[m]other failed to present clear and convincing evidence that all viable alternatives to terminating parental rights have been exhausted." Appellant's brief, p. 27.

Although the father quoted Chief Justice Cobb's special concurrence in Ex parte J.E., 1 So. 3d 1002 (Ala. 2008), which mentioned the best interest of the child, the argument in the appellant's brief did not include any contention that the mother had the burden of proving that the termination of his parental rights was in the best interest of the child. In fact, the quoted language from Chief Justice Cobb's special concurrence did not specifically state that a custodial parent seeking to terminate the parental rights of a noncustodial parent has the burden of proving that termination is in the child's best interest. Rather, Chief Justice Cobb noted that the termination of parental rights had "often" been found to be inappropriate "'in cases … in which the children are safely residing with the custodial parent and the continuation of the

20

noncustodial parent's parental rights does not present any harm' to the children's best interests." Ex parte J.E., 1 So. 3d at 1013-14 (Cobb, C.J., concurring specially) (citation omitted; emphasis added). Additionally, there is nothing in the appellant's brief that even remotely resembles an argument that the mother did not satisfy her burden of proving that the termination of the father's parental rights was in the child's best interest.

> "The purpose of Rule 28, Ala. R. App. P., outlining the requirements for appellate briefs, is to conserve the time and energy of the appellate court and to advise the opposing party of the points he or she is obligated to make. United States v. Levy, 391 F.3d 1327 (11th Cir. 2004) (discussing the rule that issues not briefed are waived and Rule 28, Fed. R. App. P., which sets out the requirements for appellate briefs in the federal courts)."

Ex parte Borden, 60 So. 3d at 943 (emphasis added).

> "Rule 28(a)(10) is in place for at least two reasons. First, it enables the appellate court to focus on determining whether the arguments presented by the appellant have merit. It is not the responsibility of this Court to construct arguments for a party or to fill in gaps from string citations offered in lieu of arguments. Rather, it is our duty to decide whether the arguments presented have merit. See Wagner v. State, 197 So. 3d 517, 520 n.3 (Ala. 2015) ('It is well settled that it is not the function of this Court to create legal arguments for the parties before us.'). It is the responsibility of the appellant to make arguments accompanied by analysis, supported by relevant authority and citations to the record, and to show how that authority supports the finding of reversible error. A conclusory statement followed by a string citation does not suffice.

"Second, delineated arguments advise the appellee of the issues that must be addressed in response. Ex parte Borden, 60 So. 3d 940, 943 (Ala. 2007). If an argument is presented without reasoned analysis, specific legal authority, and adequate facts from the record to support the appellant's contention that the trial court's ruling was in error, it is difficult, if not impossible, for the appellee to adequately respond. And it creates an unfair advantage for the appellant -- because he or she can make arguments for the first time in a reply brief, leaving the appellee without an opportunity to counter those arguments absent permission from this Court."

Magers v. Alabama Women's Ctr. Reprod. Alts., LLC, 325 So. 3d 788, 790 (Ala. 2020) (footnote omitted).

The father's arguments in his appellant's brief were not sufficient to advise the mother that she was obliged to address whether she had presented sufficient evidence to establish that the child's best interest would be served by the termination of the father's parental rights. Additionally, contrary to Presiding Judge Moore's statements in his special concurrence in this case, nothing in the mother's appellee's brief to the Court of Civil Appeals ("appellee's brief") indicates that the mother understood that the father was raising such an issue.

The argument section of the appellee's brief included a subsection titled "Applicable Law for Terminating Parental Rights." In that section, the mother stated:

22

"The test a juvenile court must apply in a termination of parental rights action brought by a custodial parent is well settled:

"'First, the court must find that there are grounds for the termination of parental rights, including but not limited to, those specifically set out in § 12-15-319[, Ala. Code 1975]. Second, after the court has found that there exists grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered.' A.D. v. R.P., 345 So. 3d 657, 661 (Ala. Civ App. 2021)."

Appellee's brief, pp. 51-52. After quoting § 12-15-319(a), the mother went on to state:

"Furthermore,

"'a rebuttable presumption that the parent is unable or unwilling to act as a parent exists in any case where the parent has abandoned a child and this abandonment continues for a period of four months next preceding the filing of the petition. Nothing in this subsection is intended to prevent the filing of a petition in an abandonment case prior to the end of the four-month period. Ala. Code § 12-15-319(d).' A.D. v. R.P.[, 345 So. 3d] at 661.

"Abandonment is defined in Ala. Code 1975, § 12-5-301(1), as

"'a voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by

23

the parent, of his or her presence, care, love, protection, maintenance, or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent.' A.D.[, 345 So. 3d] at 661.

"As held by this Honorable Court in C.C. v. L.J., 176 So. 3d 208, 216 (Ala. Civ. App. 2015),

"'a noncustodial parent who has abandoned his or her child does not have a sufficient familial relationship that merits due-process protection and that a juvenile court may terminate the parental rights of that parent without exhausting alternatives if to do so would be in the best interest of the child.'"

Appellee's brief, pp. 53-54. The mother then went on to argue that the facts in B.B. v. J.P., 388 So. 3d 710 (Ala. 2023), which the father relied upon to support his argument that the evidence did not support a finding that he had abandoned the child, were distinguishable from the facts in this case. She also argued that this case "is actually more akin to the facts and circumstances in C.C. v. L.J., 176 So. 3d 208 (Ala. Civ. App. 2015), whereby this Court upheld a trial court's ruling terminating the parental rights of a father." Appellee's brief, p. 58. She went on to argue:

"Due to the Father abandoning the child as demonstrated herein, the trial court was not required to exhaust all viable alternatives before terminating his parental rights. However, as was seen by his actions over the previous years, the Father

24

simply disappears leaving the Mother to handle everything related to the child.

"As was the case in C.C., the trial court in this matter could have reasonably determined, by clear and convincing evidence, that the Mother had done nothing to prevent the Father from developing a relationship with the child and that the Father had voluntarily, intentionally, and unjustifiably forgone a relationship with the child, had failed or refused to financially support the child, had abandoned the child, and had failed or refused to act as a parent to the child. In doing so, the Appellate Court may not reweigh the evidence to overturn the judgment of the trial court."

Appellee's brief, pp. 68-69. At no time did the mother address the issue whether she had presented evidence indicating that it was in the child's best interest to terminate the father's parental rights. Rather, the mother addressed the arguments actually presented in the appellant's brief -- that she did not present clear and convincing evidence to support a finding that the father had abandoned the child and that she did not present clear and convincing evidence to establish that all viable alternatives to termination had been exhausted.

In the father's reply brief in the Court of Civil Appeals ("reply brief"), the father argued:

"Mother, again relying on C.C. v. L.J.[, 176 So. 2d 208 (Ala. Civ. App. 2015)], argues that the juvenile court was not required to exhaust all viable alternatives prior to

terminating Father's parental rights. This is so, according to Mother, because of her abandonment argument.

"The case of W.W. v. H.W., [384] So. 3d [663] … (Ala. Civ. App. 2023), refutes Mother's argument. In W.W., the juvenile court found that the father had abandoned the child.[1] This Court affirmed the juvenile court's determination that the father had abandoned the child. Notwithstanding the affirmance of that finding, this Court state[d], 'However, the juvenile court was still required to consider whether the termination of the father's parental rights would serve the child's best interest.' Id. at [670]. The 'paramount concern in a termination-of-parental rights action is the best interest of the child.' Id. at [671] (citations omitted). This Court also noted that the termination of parental rights would leave the child without a legal father. Id. Because there was no evidence to support that finding in the record, this Court reversed the juvenile court's judgment terminating the father's parental rights.

"The same scenario is present here. In this case, the juvenile court did not make any finding that it was in the Child's best interests to terminate Father's parental rights. … Further, even if there is evidence in this record to support the conclusion that Father voluntarily abandoned the Child, there is no evidence presented by Mother that it would be in the Child's best interest to be without a legal father.[2] The evidence, on the whole, demonstrates that Father will engage in parenting time and will pay support when the court has given him the opportunity to do so, and when Mother actually cooperates with court orders.[3] The record also demonstrates Father's repeated -- yet rebuffed -- efforts to obtain court-ordered parenting time, which efforts were repeatedly required due to Mother's dictatorial approach to parenting time.

"In short, W.W. v. H.W., supra, strongly supports Father's argument that the juvenile court's judgment should

26

be reversed. There was no finding that terminating Father's parental rights is in the Child's best interest. There are viable alternatives to terminating Father's parental rights. Those alternatives are -- or at least were -- actively being pursued by Father in the custody action. Reversing the juvenile court's judgment in this case will allow Father to obtain court-ordered parenting time and child support in the custody action such that he might be able to foster a relationship with the Child despite Mother's repeated continuances and requests for delay. At a bare minimum, Father should be given the opportunity to abide by the terms of a binding court order in the custody action prior to having his parental rights terminated and leaving the Child without a legal father.

"_____

"[1]In W.W., this Court also noted that the father 'could have sought to enforce his visitation rights with the child, but he did not do so.' W.W., [384 So. 3d at 670]. As Father has extensively argued in his principal Brief, he was actively seeking to establish parenting time and a child support obligation when the juvenile court terminated his parental rights.

"[2]Although the juvenile court instructed Father's counsel not to inquire into Mother's divorce from her new husband, … that testimony and evidence was certainly relevant to show that Mother's new husband would not be adopting the Child.

"[3]The Court will recall that Mother actively frustrated Father's attempts at parenting time by not completing requirements to allow Father to have parenting time at the Family Center … and by absconding with the Child to Maine without court permission."

Reply brief, pp. 8-10.

27

When reading the arguments that the parties presented in their briefs to the Court of Civil Appeals in context, it is clear that the father's reply brief did not expand on any actual argument he had presented in his appellant's brief. Rather, the father argued for the first time in his reply brief that the juvenile court had not made any finding that it was in the child's best interest to terminate his parental rights and that there was "no evidence presented by Mother that it would be in the Child's best interest to be without a legal father." Reply brief, p. 9. This Court has held:

> "It is a well-established principle of appellate review that we will not consider an issue not raised in an appellant's initial brief, but raised only in the reply brief. Birmingham Bd. of Educ. v. Boyd, 877 So. 2d 592 (Ala. 2003); Sanders v. Smitherman, 776 So. 2d 68, 73 (Ala. 2000)."

Lloyd Noland Hosp. v. Durham, 906 So. 2d 157, 173 (Ala. 2005). See, e.g., Edwards v. Crowder, [Ms. SC-2023-0151, May 24, 2024] ___ So. 3d ___, ___ n.5 (Ala. 2024); Lay v. Destafino, 385 So. 3d 15, 21 n.1 (Ala. 2023); Crews v. National Boat Owners Ass'n Marine Ins. Agency, Inc., 46 So. 3d 933, 942 (Ala. 2010); Moore v. Mikul, 359 So. 3d 274, 278 (Ala. 2022); and Steele v. Rosenfeld, LLC, 936 So. 2d 488, 493 (Ala. 2005). "'When an

28

appellant fails to argue an issue in its [initial] brief, that issue is waived.' Boshell v. Keith, 418 So. 2d 89, 92 (Ala. 1982)." Crews, 46 So. 3d at 942.

Additionally, the Court of Civil Appeals has held: "'[I]t is well settled that an appellate court will not consider arguments raised for the first time in a reply brief.' Archer v. America's First Federal Credit Union, 290 So. 3d 829, 832 (Ala. Civ. App. 2019)." B.N.D. v. Barbour Cnty. Dep't of Hum. Res., 370 So. 3d 271, 281 n.1 (Ala. Civ. App. 2022). See, e.g., Verano Alabama, LLC v. Alabama Med. Cannabis Comm'n, [Ms. CL-2023-0831, Apr. 19, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024); Stewart v. Sutton, 383 So. 3d 685 (Ala. Civ. App. 2023); M.B. v. J.S., 327 So. 3d 1147, 1165 n.4 (Ala. Civ. App. 2020); Ayers v. Mays, 320 So. 3d 606, 620 (Ala. Civ. App. 2019); and Williams v. Williams, 70 So. 3d 332, 334-35 (Ala. Civ. App. 2009).

In his dissenting opinion in W.C.M., Judge Fridy explained the danger of considering an issue that has been raised for the first time in a reply brief as follows:

"In creating an entire legal argument on behalf of the father, the main opinion has failed to adhere to our proper function to serve as arbiters of the law and instead has unfairly taken up the mantle of advocate for one of the parties appearing before us. Not only is this unfair to the mother, the appellee in this case, it is unfair to litigants in any other

29

matter in which an appellate court has identified an issue, but, because that issue was not argued in the appellant's opening brief, has declined to address it. See, e.g., Archer v. America's First Fed. Credit Union, 290 So. 3d 829, 832 (Ala. Civ. App. 2019); S.S. v. Jefferson Cnty. Dep't of Hum. Res., 154 So. 3d 1049, 1052-53 (Ala. Civ. App. 2014); Crews v. National Boat Owners Ass'n Marine Ins. Agency, Inc., 46 So. 3d 933, 942 (Ala. 2010); Davant v. United Land Corp., 896 So. 2d 475, 487 (Ala. 2004); Deutsch v. Birmingham Post Co., 603 So. 2d 910, 911 (Ala. 1992); Boshell v. Keith, 418 So. 2d 89, 92 (Ala. 1982).

"Ignoring the guiding principle that precludes us from creating arguments on behalf of a party damages the integrity of this court's role as an impartial arbiter of the cases that come before us. Reversing a judgment on a ground that an appellant has not argued creates uncertainty for future appellees, who may now feel the need to guess what issues this court might develop on its own initiative. It also places this court in the predicament of determining which future cases are 'worthy' of our intercession regardless of what arguments the appellant makes.

"....

"To be sure, as the main opinion points out, the father, in his reply brief, does make the best-interest argument on which the main opinion bases its reversal of the juvenile court's judgment. But this court should never reverse a trial court's judgment based on an argument appearing only in a reply brief, and the main opinion is wrong to do so here. Why? Because, as we have often written, arguments made for the first time in a reply brief, like the father's best-interest argument here, are waived. Huntley v. Regions Bank, 807 So. 2d 512, 516 n.2 (Ala. 2001); see also Verano Alabama, LLC v. Alabama Med. Cannabis Comm'n, [Ms. CL-2023-0831, Apr. 19, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024). Such a rule makes sense in light of the fundamental unfairness to an

appellee who, armed with only a single brief sandwiched between the appellant's initial and reply briefs, is unable to respond to arguments raised for the first time in the reply brief. See Magers v. Alabama Women's Ctr. Reprod. Alts., LLC, 325 So. 3d 788, 790 (Ala. 2020) (noting the 'unfair advantage' to an appellant were the appellant allowed to make arguments for the first time in a reply brief, leaving the appellee 'without an opportunity to counter' such arguments)."

W.C.M., ___ So. 3d at ___ (Fridy, J., dissenting).

Because the father raised his argument that the mother had not presented clear and convincing evidence indicating that the termination of his parental rights was in the child's best interest for the first time in his reply brief, the Court of Civil Appeals erred when it reversed the juvenile court's judgment on that ground. Accordingly, we reverse the Court of Civil Appeals' judgment. However, in its opinion, the Court of Civil Appeals pretermitted discussion of the father's argument that the mother had not presented clear and convincing evidence to support a finding that he had abandoned the child and his argument that the mother had not presented clear and convincing evidence to establish that all viable alternatives to termination had been exhausted. Accordingly, we remand this case for the Court of Civil Appeals to consider the arguments the father raised in his appellant's brief.

Conclusion

Based on the foregoing, we reverse the Court of Civil Appeals' judgment in this case and remand this case to that court for proceedings consistent with this opinion.

REVERSED AND REMANDED.

Stewart, C.J., and Shaw, Bryan, Mitchell, Cook, and McCool, JJ., concur.

Sellers, J., dissents, with opinion.

Mendheim, J., dissents.

SELLERS, Justice (dissenting).

I respectfully dissent. The welfare and best interests of a child are paramount considerations in proceedings to terminate parental rights. C.J. v. T.J., 225 So. 3d 115 (Ala. Civ. App. 2016). When a juvenile court determines that parental rights are to be terminated, the court must consider whether doing so would serve the best interests of the child. J.A. v. S.L., [Ms. CL-2023-0576, June 28, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024). The best-interest inquiry involves consideration of a myriad of factors, including the emotional, social, moral, material, and educational needs of the child; the child's needs for a secure, stable, and permanent environment; and the need for an environment that is both nurturing and conducive to promoting a mature, well-adjusted, and responsible adult. See, e.g., Ex parte Devine, 398 So. 2d 686, 696 (Ala. 1981). Because courts are entrusted with the responsibility of determining and protecting the best interests of children who come before them, it is my opinion that a child's best interests must always be considered, even when an issue relating thereto is not preserved for appellate review. See Hall v. Hall, 280 Ala. 275, 280, 192 So. 2d 727, 731 (1966) ("We think this court has a duty ex mero motu to protect the welfare of its minor ward who is before

the court.").  Therefore, I would affirm the judgment of the Court of Civil

Appeals.